## George E. Hubbard v. George W. Miller and others.

*Contracts in restraint of trade : Presumption.* Contracts in restraint of trade, which, considered with reference to the situation, business and object of the parties, and in the light of all the surrounding circumstances, appear to have been made for a just and honest purpose and for the protection of legitimate interests, and are reasonable as between the parties, and not specially injurious to the public, will be upheld; and the weight or effect to be given to the surrounding circumstances is not affected by any presumption for or against the validity of the restriction.

*Consideration.* Such contracts, if unobjectionable in other respects, require no greater pecuniary or valuable consideration to support them than any other contract; and if objectionable in other respects no amount of pecuniary consideration will render them valid.

*Contracts in restraint of trade ; Consideration.* When one who is engaged in any branch of business purchases the business and stock of another engaged in the same branch of business, on the condition that the vendor shall not further carry on this particular branch of business within a reasonable extent of territory, such restraint of trade, being reasonable and fair between the parties, will be enforced; and the fact that the price paid does not exceed the cost of the goods purchased does not affect the validity of the contract.

*Contract construed.* An agreement made in consideration of such a purchase of the business of sinking drive wells and keeping and selling the materials therefor at Grand Haven, that the vendors would not "keep well-driver's tools or fixtures, or engage in the business of well-driving," is construed to impose a restraint upon the carrying on of such business at Grand Haven and within such limits about that city as this business there located would naturally and reasonably embrace, and not such a general and unlimited restraint of trade as to be void; and is sustained as reasonable, and enforced by injunction.

*Equity pleading and practice : Injunction : Parties.* This sale and agreement having been made by a firm of two persons, one of whom afterwards went into the business alone, and the other as a partner with a third person who is made a defendant, the injunction is limited as to such third person, to prevent him simply from engaging in the business as a partner with either of the other defendants, and not to restrain him individually.

*Heard January 11. Decided April 15.*

Appeal in Chancery from Ottawa Circuit.

*Boynton & Pratt,* for complainant.

*Akeley & Stewart,* for defendants.

CHRISTIANCY, CH. J.

This was a bill for a perpetual injunction to restrain the defendants from carrying on the business of putting

down " drive wells," called the " American Drive Wells,"
(consisting mainly of an iron tube driven into the ground,
and a pump attached) and from selling or dealing in the
tools or apparatus used for that purpose in the city of
Grand Haven, and (as the bill expresses it) " the adjacent
vicinity."

The defendants Miller and Decker answered this bill,
and defendant Akeley demurred generally. The case was
heard in the court below upon pleadings and proofs, and
the bill dismissed. The complainant appeals to this court.

The case stated in the bill and sustained by the evi-
dence may be stated substantially as follows: The com-
plainant in September, 1870, and for some time previous
thereto, was engaged in carrying on the business of a gen-
eral retail hardware store in the city of Grand Haven,
including the tubing and all necessary apparatus and tools
for sinking the drive wells above mentioned, and in con-
nection therewith was also engaged in putting down such
wells for those who chose to employ him. And two of the
defendants, George W. Miller and Adolphus M. Decker, as
partners under the style of " George W. Miller & Co.," kept
a like hardware store in the same city, and, like the com-
plainant, kept on hand the tubing and other materials used
in putting down such wells, and were engaged in putting
them down for those who chose to employ them.

It does not clearly appear how extensive was the terri-
tory in which any of the parties were then engaged in
putting down wells, or in which customers were supplied
by them with the articles in question; but so far as does
appear it is fairly to be inferred that this business was
mainly confined to the city and a comparatively small por-
tion of country around it, and there is nothing from which
we can reasonably infer that it extended beyond the limits
of the county of Ottawa, nor, in fact, so far as to include
within its limits any other village or city the business of
which would be likely to warrant or secure the establish-
ment of a retail hardware store. And both the complain-

ant and George W. Miller & Co. seem to have been of the opinion that the business would not be remunerative or profitable to either concern, while both continued to carry it on and to compete with each other, though there might be enough to make it a paying business for one of them. With this view complainant proposed to Miller & Co. to purchase out all that portion of their stock of materials pertaining to the well business, and to pay them the cost price of the same (including freight), if they would cease to do that kind of business. This was assented to by that firm, and a bill of items with the cost of each article was made out, headed, "Mr. George E. Hubbard, bought of George W. Miller & Co., dealers in general hardware, Washington street."

The items footed up amounted to_____ $296 19
To which was added: "Add for freight, 5 per cent.    14 80

                                                     $310 99

At the foot of the above bill and preceding the signature of Miller & Co. was written the following: "In consideration of the above sale we agree not to keep well-drivers' tools or fixtures, and not to engage in the business of well-driving after this date.

                    "Received payment.
      (Signed)              "GEO. W. MILLER & Co."

The defendants, Geo. W. Miller & Co., continued in the same general retail hardware business as before, with the exception of the particular branch of it pertaining to the drive-well business (which seems to have been but a comparatively small part of it), until January or February, 1871 (the bill says January, the answer, February, and the evidence does not show which), when the firm of George W. Miller & Co. was dissolved, and the dissolution publicly announced. And immediately thereafter the said George W. Miller and the defendant Akeley entered into a new partnership under the former name of George W. Miller & Co., in the same retail hardware business, which they carried on

in the same store formerly occupied by the old firm of George W. Miller & Co. when Decker was one of the partners. And the defendant Decker (who had been a member of the former firm), about the same time—the winter of 1871— rented another store in the immediate vicinity of the store of complainant, and also went into the like general retail hardware business.

In April, 1871, the new firm of George W. Miller & Co., (composed of Miller & Akeley), commenced keeping and selling the same kind of materials and articles pertaining to the drive-well business, and went into the business of sinking the same kind of wells, which, by the agreement mentioned above, the old firm had bound themselves not to do—Akeley, as he admits by his demurrer, having notice of that agreement. And soon afterwards the defendant Decker also commenced keeping the same kind of articles in connection with *his* hardware business, in disregard of the agreement of the firm of George W. Miller & Co., to which he, as a member of that firm when the agreement was made, was a party. And both said new firm of George W. Miller & Co. and the said Decker still continued in such well-driving business and in the sale of such prohibited articles, in spite of complainant's remonstrances, down to the time of the filing of the bill.

The only ground of objection relied upon by the defendants in this court, to the case made by complainant, or the relief asked, are (stating them in their logical order):

1. That the contract relied upon being in restraint of trade, must be presumed void unless shown to be based upon some special and peculiar consideration; and that the only consideration paid being the cost price of the goods at Grand Haven, this is not sufficient to support the restraint contracted for, though the contract should in other respects be valid; and, 2d, that the restraint imposed upon Miller & Co. by the contract, is void, because general and unlimited as to place, forbidding the vendors to enter upon the prohibited business anywhere.

The first objection is wholly independent of the second, and in considering it we must proceed upon the hypothesis that the contract would, but for the first objection, be valid. It has sometimes been said by text writers, and even by courts, that all contracts in restraint of trade, whether general or limited, are *prima facie* void, or that they are to be presumed void, until it be shown, not only that there was an adequate consideration, but that the circumstances under which the contract was made were such as to render the restraint reasonable. But the rule to be drawn from a careful analysis of the adjudged cases and the reasons upon which they are founded, does not seem to us to involve any such presumption in the accurate or legal sense of the term, and may be more correctly stated to be, that all contracts in restraint of trade are void, if considered only in the *abstract*, and without reference to the situation or objects of the parties or other circumstances under or with reference to which they were made; and this, though the ,pecuniary consideration paid may have been sufficient to support the contract in any other aspect, or any ordinary contract for a legal purpose; or even though it may be sufficient in value to compensate the restraint imposed. But if, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public, the restraint will be held valid. A contract of this kind requires no greater pecuniary or valuable consideration to support it than any other contract; but such consideration, however valuable, will not of itself support it. Whether it can be supported or not, depends upon matters outside of and beyond the abstract fact of the contract or the pecuniary consideration; it will depend upon the situation of the parties, the nature of their busi-

ness, the interests to be protected by the restriction, its effect upon the public; in short, upon all the surrounding circumstances; and the weight or effect to be given to these circumstances is not to be affected by any presumption for or against the validity of the restriction; if reasonable and just, the restriction will be sustained, if not, it will be held void. To illustrate, in fact, by a single example: If A, who is not engaged in the business of keeping a public house, or a dry goods store, or a saddler's shop, and does not contemplate entering upon or being interested in such business, goes to B, who is engaged, or preparing and about to engage, in such business, and takes a contract from B not to continue or engage in such business in a particular city or village or other territory, defined or undefined, such a restriction would be void, whatever pecuniary consideration might be paid for it. A can have no legal interest in, and can derive no benefit from, such a restraint, and has no legal interest in its observance; and it would be imposing a restriction upon B which might be burdensome to him without any corresponding benefit. It would, therefore, be wholly unreasonable and void. But, on the other hand, if A, being already engaged, or about to engage in any such business, should purchase out the stock and business of B, or any particular branch of it with the stock pertaining thereto, on the condition or upon the terms that B should not further carry on that business, or the particular branch of it, within the town where located, or other reasonable extent of territory to which the business might probably be extended by A, and B should thus contract, this restraint under such circumstances would be fair and just and reasonable between the parties, one of whom gives what, without such restraint, he would not have given, and the restraint contracted for being an essential consideration, without which the vendor could not have made the sale for the price received, and the purchaser would not have bought; and such restraint being a benefit to the purchaser and not specially injurious

to the public,—as every other person except the vendor is still at liberty to engage in the same business within the same limits: such a restraint, under such circumstances, would be fair, reasonable and valid, and would be enforced like any other valid contract.

Now, the circumstances of the present case, the nature of the business, the situation, objects and interests of the parties, are precisely of the character which bring the case within these principles as recognized by all the authorities for the last one hundred and fifty years, at least. The fact that complainant paid no more than the cost of the articles at Grand Haven can make no difference. Where a consideration recognized by law as being valuable is paid, the law very properly allows the parties to judge for themselves of the sufficiency in value of such consideration for their contracts. We cannot, therefore, enter into the question whether the consideration was commensurate in value with the restraint imposed. See *Hitchcock v. Coker, 6 Ad. & E., 438; Pilkington v. Scott, 15 M. & W., 657; Hartley v. Cummings, 5 C. B., 247.* And there is no reason for holding that, without the restraint contracted for, complainant would have been willing to purchase for the price he gave, nor can we say that the vendors could have sold at that price without such stipulation. In fact, we must infer that, in their opinion they could not readily have done so without it, or they would not have given it. It is clear, at all events, that they thought the sale with the stipulation an advantageous one or they would not have made it. The contract must, therefore, be held fair, reasonable and valid, unless too general and unlimited as to place, as insisted under the second objection.

It is true, there is no limitation as to place or extent of territory over which the restriction was to extend, by the express words of the contract. It is entirely silent upon this point, and it is urged that the restraint is therefore general and unlimited as to territory, and would apply to

any place where the vendors might attempt to carry on this branch of business.    But was this the meaning and intention of the parties ?    The contract imposing the restraint is brief and informal, written by one of the parties at the bottom of the bill of the goods sold.    All contracts should be construed according to the intention of the parties; and in ascertaining that intent from this informal mercantile contract, it is  especially  proper  to look to the whole subject matter of the contract, the situation of the parties, the nature and  extent  of  the  business,  the  purposes  to be accomplished by the restriction, and  all  the  surrounding circumstances to which the parties must  be  supposed  to have  referred  in  making it.    Thus  considered,  when  the defendants, Miller & Co., sell out this particular portion of their  stock  to complainant, who keeps the same articles and is engaged in the well-driving business,  and  agree  for  the future not  to keep such articles for, and not to engage in, the business of well-driving, we think it reasonably certain that all  parties  understood this to refer to the keeping of such articles for sale at Grand Haven,  the  place where all parties were  doing business, and  for  some  space,  at  least, around  it; and, considering the object of the restriction, it may  be  inferred  to have been intended  to prevent the vendors from  competing with complainant in the sale  of  such articles and in the putting down of wells over an  area around the city in which the people did then, or  would  naturally in the future, resort to that city for the purchase  of  such wells and for procuring parties to put them down.    But we see no reason to infer an intention to restrain Miller & Co., should they remove to Grand Rapids (40 miles), or to any other city or village, however near, and  large  enough to warrant the  establishment of such  a  store, from establishing in such city or village a store of this kind, including for sale the articles in question, or  from  engaging  in putting down wells in connection therewith.    And, supposing a contract imposing an unlimited restraint to be valid, if Miller  &  Co.  had  established  such  business  in  Grand

Rapids or such other town or village, we should, I think, unhesitatingly say, this is no violation of the present contract, because not within the intention of the parties. And we must, therefore, say that in any such town or beyond such area about the city of Grand Haven, this restriction was not intended to operate. And in view of all the circumstances it is simply preposterous to say that complainant contemplated putting down these wells over the whole state and supplying the people of the whole state with the materials for that purpose.

The sale to the complainant with the restriction contracted for was somewhat analagous to the sale of a goodwill, differing mainly in the fact that it was a sale of only a portion of the business, and did not include the building or business stand, which usually, if not always, accompanies the sale of a good-will, strictly so-called. And though there may be some difficulty in defining the exact territory by metes and bounds over which this restriction in some of its phases was intended to apply, it is at least clear enough that it was not intended to be unlimited as to area, but that in any fair view which can be taken of it, it is confined to a comparatively small extent of territory and wholly unobjectionable on this ground, fair and reasonable between the parties, and not materially prejudicial to the public; and that it should be enforced as far as capable of enforcement. But if the contract were equally susceptible of the construction claimed for it by the defendants (which we think it is not), as parties are not lightly to be presumed to intend a violation of the law, it would still be our duty, according to the well settled rules of law, to adopt the construction which would make it conform to the law, rather than that which would make it violate the law. See *Church Wardens of St. Saviour, 10 Rep., 67 b.; Archibald v. Thomas, 3 Cow., 284; Coke Lit. 42, 183; Attorney General v. Chapman, 31 Eng. L. & Eq., 142; Many v. Beekman Iron Co., 9 Paige, 188; Shore v. Wilson, 9 Clark & Fin., 397.*

But, though the contract is legal and fair, and the restraint does not apply to an unreasonable extent of territory, we may not be able by injunction to give the complainant the full benefit which the contract was intended to give him, by reason of the absence of any specific and defined boundaries in the contract to which the restriction should apply.    But this consideration should not prevent us from giving the relief sought, so far as the right is clear and the limits ascertainable with reasonable certainty, taking care to keep clearly within the intended limits.· It was manifestly the intention of the contract first, to restrain Miller & Co. from keeping on hand or selling the articles in question within the city of Grand Haven, whether to be used by themselves or others in the sinking of wells, and to prevent them from keeping or in any way furnishing them there, wherever or by whomsoever intended to be used.    Thus far there is entire certainty.

But, second, it is equally clear that the restraint against keeping or selling such property was not intended to be confined strictly to the city limits, but to extend far enough to prevent a mere evasion by keeping and selling such articles in such immediate proximity to the city as materially to lessen the value of the restriction.    It is, therefore, safe to say that the vendors were not to be at liberty to keep or sell such articles within one mile of the city limits; and as their own interest would be a sufficient protection against their establishing a place for the keeping and sale of such articles anywhere between there and the next city or village, as they could expect few customers, it is unnecessary to discuss the right to keep or sell within that intervening space.

But, third, Miller & Co., were intended to be allowed to establish a hardware store in any other city or village where the business would warrant its establishment, and in connection therewith to keep and sell the articles in question and engage in putting down wells in any place where their customers should choose to employ them.

HUBBARD *v.* MILLER.

But fourth, from the nature of the business of sinking wells, we may safely conclude that it was not expected or understood to be confined to so limited a territory as that to which the prohibition against the selling was to apply. But the contract, and the evidence produced in this case, showing the extent of its application, do not authorize us to enforce the restrictions by injunction over a larger extent of territory than above indicated, though we think it quite clear the prohibition against putting down wells, as an independent business not connected with a hardware store at Grand Haven, was intended to have a more extensive operation. But in case said defendants shall attempt to carry on such business as an independent business not connected with a hardware store, outside of the limits above indicated, the complainant must be at liberty to test their right in an action at law upon the contract, or in a new suit in equity upon such new state of facts as may be shown.

The decree of the court below dismissing the bill must be reversed with costs; and a decree must be entered in this court for a perpetual injunction upon the principles, and to operate within the limits, above indicated.

The defendants, Miller and Decker, are bound individually, as well as jointly, by the direct effect of the contract. But Akeley, not being a party to the contract, is bound only as a partner of Miller (he would be equally bound if a partner of Decker), and during the continuance of such partnership; and, upon its dissolution, would not be individually bound by the contract. This must be observed in framing the decree.

The other Justices concurred.