## LEGALITY OF A COVENANT BY LESSEE TO SELL ONLY THE PRODUCTS OF LESSOR.

Circuit Court of Putnam County.

CHRIS. DIEHL BREWING CO. v. LOUIS A. KONST.

Decided, 1905.

*Landlord and Tenant—Construction of Lease of Premises for Saloon Purposes—Enforcement of Lease by Injunction—Covenant to Sell Only Beer Manufactured by the Lessor Does Not Invalidate the Lease.*

1. The provisions of a lease of premises for saloon purposes, wherein the lessee covenants not to sell any beer other than that manufactured by the lessor, extend to another room rented by the lessee and used by him with the lessor's consent in connection with the saloon as originally operated; and the lessee can not, after the lessor at his request has installed new bar fixtures in the new room, tear out the new fixtures and repudiate his lease.
2. The lessee of premises leased on condition that only beer manufactured by the lessor shall be sold on the premises, may be enjoined from a repudiation of his agreement not to sell other beer.
3. A provision in a lease whereby the lessee engages to sell no beer on the leased premises other than that manufactured by the lessor, in nowise affects the public and is not invalid as in restraint of trade or in violation of the Valentine anti-trust law.

*B. F. Enos* and *Risser & Smith,* for plaintiff.
*Bailey & Leasure,* contra.

HURIN, J.; NORRIS, J., and VOLLRATH, J., concur.

Appeal from Putnam Common Pleas Court.

This action involves the validity of a contract between a brewing company and a saloon keeper, whereby the latter agreed for a term of years to sell no other beer on certain premises than that furnished by the former. The case was heard by us on appeal, the essential facts being agreed upon.

A somewhat lengthy statement of the facts will be necessary in order to make the issues plain.

Plaintiff, the brewing company, is the owner of a brick building, the first story of which has been occupied for some years by

defendant as a saloon.   Formerly he occupied this saloon under
a lease from month to month, but on October 10, 1904, he entered
into a written agreement of lease for a period of five years, agree-
ing to pay for the premises leased the sum of $360 per year in
monthly installments.

By the terms of this lease defendant was to have the use of all
the saloon furniture and fixtures then in said building free of
cost.

. The lease contains the following covenant, which is the bone
of contention in the case at bar:

"Said second party further covenants and agrees as a part of
the consideration for said leased premises and use of said furni-
ture and fixtures, to deal exclusively in the beer manufactured
by said party of the first part and not to in any manner sell or
expose for sale in said premises any beer not manufactured by
said first party during the full period of this lease, and that any
alterations or changes made in said building shall be made at
the sole expense of said party of the second part and no such
alteration or change shall be made until after first obtaining the
written consent of said first party therefor in writing."

. Defendant continued to occupy said property as a saloon un-
der this lease for about two years until May, 1906, when he also
rented of one Laura E. Andrews a business room adjoining that
formerly used by him, but continued to occupy both rooms, using
the Andrews room as a billiard and lunch room and plaintiff's
room as a saloon.   For the first three months plaintiff paid a
part of the rent of the Andrews room, and by agreement be-
tween plaintiff and defendant a doorway was cut in the wall
between the two rooms, which door was used by defendant in the
operation of the two branches of his business.

Soon afterwards defendant, by consent of plaintiff, moved the
saloon fixtures into the Andrews room and the billiard tables and
lunch counter into plaintiff's room, the latter being a larger room,
and more convenient for the purpose.

Plaintiff assented to this agreement, and at defendant's re-
quest plaintiff later on put larger saloon fixtures in the Andrews
room in place of those removed thither from the plaintiff's room.

Afterwards defendant, with plaintiff's consent, sold the bil-
liard and lunch part of his business to one Diehl Richards, who

operated it for a short time, but subsequently resold it to defend-ant, who from that time to the commencement of this suit con-tinued to operate the business of both rooms as at first.

Both at the time of the cutting of the connecting door and of the sale of the billiard and lunch room business to Richards, plaintiff's consent was given to these arrangements, with the mutual understanding that the terms of defendant's lease should be in no way affected thereby.

Plaintiff at all times furnished to defendant all beer ordered by him and at the same price as that first agreed upon.

Immediately prior to the commencement of this suit defend-ant notified plaintiff that he intended to purchase other beer than the plaintiff's, and defendant about the same time tore down the saloon furniture and fixtures installed by plaintiff and se-cured other furniture in their place which he is now using.

Plaintiff by this action seeks to enjoin the sale by defendant in either of said rooms of any beer other than that manufactured by plaintiff.

Defendant by its answer admits the lease of plaintiff's room and the terms of the lease as to rental and fixtures, but pleads that the covenant to deal exclusively in beer manufactured by plaintiff and not to sell other beer in said premises is void as in violation of the anti-trust laws of Ohio, and as in restraint of trade and against public policy.

We have not been favored with any brief by counsel for de-fendant, but in oral argument it is claimed that the sale of beer other than that manufactured by plaintiff is not a violation of the lease, if such beer is sold in the Andrews room and not in plaintiff's room and that the lease has therefore been strictly complied with.

Second. That the covenant not to sell other beer than the plaintiff's is contrary to law and public policy and is therefore void; and

Third. That injunction is not the proper remedy of plaintiff, who must sue, if at all, in an action at law for damages for breach of contract.

Defendant's whole reliance as to the law of the case seems to be on two cases decided by the circuit courts of Lucas and Cuyahoga

counties; the cases of *Huebner-Toledo Breweries Co.* v. *Singlar*, 8 C. C.—N. S., 49, and *Cleveland & S. Brew. Co.* v. *Demko*, 9 C. C.—N. S., 130.

The facts disclosed in the former case are so different from those in the case at bar, that that decision is only valuable in our discussion for the evident ability with which the authorities are therein reviewed.

As to the first defense suggested, we have no hesitancy in saying that it rests upon the thinnest of technicalities, unworthy of consideration by a court of equity.

As long as the saloon fixtures remained in plaintiff's room, even after the two rooms were connected and became practically one, no question was raised. Defendant had recognized plaintiff's rights under the lease by asking and obtaining its consent to cutting the door connecting the two rooms, and this with the express agreement that the terms of the lease should not thereby be affected. Again defendant recognized plaintiff's rights under the lease when he asked and obtained from plaintiff its consent to make the exchange in the use of the two rooms, removing the saloon business to the Andrews room. And again when the billiard and lunch business was sold temporarily to Richards by defendant, he did so under an express agreement that the terms of the lease should be in no way affected thereby. Again it was at defendant's request that larger and better saloon fixtures were by plaintiff installed in the Andrews room.

By all of these actions defendant impliedly, and by some of them expressly and for valuable considerations, agreed that plaintiff's lease should be considered as extended over the enlarged quarters. It is unquestioned that in the use of the two rooms defendant was operating simply an enlargement of his former business, not a separate saloon business, but the same saloon business, and especially is this shown by his express agreement made with plaintiff (when he sold out the restaurant and billiard business to Richards) that the sale of that part of his business should in no way affect the lease although he was thereafter to operate his saloon business in the Andrews room and not in plaintiff's room.

Having thus recognized plaintiff's rights under the lease in the business conducted in the Andrews room, he can not at will and in his own time and without plaintiff's consent repudiate those acknowledged rights.

To say that the sale of another brewer's beer in the Andrews room is not a sale of it in plaintiff's room, may be literally true; but since the rooms have been so connected as to be conveniently used togther in carrying on defendant's business and that too by the mutual agreement of plaintiff and defendant, and with the express agreement that the terms of the lease shall not be affected thereby; and in view of the continuous course of conduct of defendant in conducting his business in the two rooms and in recognizing plaintiff's rights under his lease in the Adrews room, defendant is now estopped from denying those rights.

The covenants of the lease provided not only that defendant should not sell other beer than plaintiff's in plaintiff's room, but also that he, the defendant, during the full period of five years and in consideration of said lease and the use of plaintiff's furniture and fixtures, should deal exclusively in the beer manufactured by plaintiff. He can not avoid this agreement by any such flimsy pretext as that now raised.

Passing the second defense for a moment and coming to the third defense, i. e., that the proper remedy of plaintiff is by action for damages and not by injunction, we have even less difficulty.

Plaintiff has definite rights under his contract, and has the right, if the contract is lawful, to insist that it shall be lived up to. The possession and use of plaintiff's property is involved.

Plaintiff rented that property for a definite purpose—the sa'e of its beer, not for the sale of a rival's beer; not to be shut up while a rival is doing a rushing business next door; and not, in the expressive language of plaintiff's counsel, to be used as a Sunday school or Y. M. C. A. It was rented for a saloon to be run in plaintiff's interest and in plaintiff's interest only.

Whatever we may think of the liquor business as a business, it has certain recognized rights under the laws of Ohio, and those rights must be recognized by courts as long as the Legislature continues to grant them.

A beer contract, if not invalid on constitutional grounds or on grounds of public policy, must be enforced like any other contract, and where, as in this case, the conflict is between two or more liquor dealers, their rights must be determined in reliance on the same legal principles as in any other analogous case.

It is evident that in the case at bar an action for damages would have afforded no adequate remedy and that plaintiff's interest can only be protected by preventing a continuous violation of his lease.

While an action for damages might afford a remedy for past violations of plaintiff's rights under the lease, there is here a case of threatened, continuous future misuse of plaintiff's property in violation of a written contract and to the continuous injury of plaintiff's property rights. This future abuse plaintiff now seeks to prevent. To do this, injunction is the proper remedy. See opinion of Judge White in *Stines* v. *Dorman*, 25 Ohio State, 580, 584.

But the main reliance of defendant is apparently on his second defense, that is, that the covenant in the lease that plaintiff's beer alone shall be sold on the leased premises or by defendant, is in violation of the Valentine anti-trust law, 93 O, L., 143 (4427-1, *et seq.*, Revised Statutes), as in restraint of trade and is against public policy and void. This raises a more difficult question of law.

Defendant's counsel relies strongly on the case of *Huebner-Toledo Breweries Co.* v. *Singlar, supra*. The court in that case holds that:

"A covenant in a lease of certain premises by which the lessee agrees to sell only the lessor's beer thereon or within a radius of one mile for a period of five years is in restraint of trade and void as against public policy if there is no conveyance to him of a good will attaching thereto."

And that:

"A contract by the vendor of a certain business not to thereafter enter into competition with the vendee in that locality is enforcible at law; but a contract, based upon no matter how valuable a consideration, by a lessee of property not to enter into

competition with the lessor in other localities is void as against public policy, and unenforcible.''

In that case a brewing company leased property to two tenants, Joseph and Annie Singlar, with the stipulation that they should sell no other beer than that supplied by lessor, either in the building so leased or within a radius of a mile thereof. These tenants owned another piece of property within a mile of the leased property; in fact, within one hundred feet of it, but unconnected with it, and they attempted to sell other beer than the plaintiff's in the property owned by them. The court held that the contract in so far as it restricted such sale in property not connected with the leased property was invalid as against public policy. That case has no bearing upon the question before us.

As we view the case at bar, the two rooms operated by defendant were by defendant himself practically made one. He occupied them both in connection, and had for various valid considerations bound himself repeatedly to extend the covenants of the lease over both rooms. This is a very different case from one involving pieces of property, not used for one and the same business and located far apart, even though the business of each was of the same kind and run by different members of the same family.

In what respect then is the contract in question a contract in restraint of trade or against public policy? The fact that this contract relates to liquor can not vary the principles by which it must be governed.

It must be presumed that this defendant has paid his tax under the Aiken law, or he would not be doing business at all. Having paid this tax, he is not to be molested under the provisions of the law in the sale of liquor of any kind, unless he can, by his own acts, limit his rights to sell. He has attempted by private contract and for a valuable consideration so to limit his rights. Had he not so contracted, he would not have obtained control of the property which he now enjoys.

Suppose a miller owns a storeroom and rents that storeroom to a grocer with the stipulation that the grocer may sell what he pleases there except only that he shall sell no other brand of

flour than that made by his lessor, the miller. Suppose a manufacturer of boots and shoes rents a room to a man in the retail shoe business with the stipulation that he shall sell only the line of shoes made by his lessor. Suppose a newspaper press agency rents its facilities for gathering news to a newspaper company, under the stipulation that no other press agency's service shall be employed for a certain period of time—five years. Suppose a newspaper manager employs an editor for the period of five years at a stipulated salary with the proviso that all of his time and talents are to be employed in the service of his employer.

In all of these cases there is a restriction in the free use of property and services and ability; but are they in restraint of trade? Is any monopoly created thereby? Is the public prevented thereby from buying other flour or another make of shoes or from reading other newspapers supplied with news from other sources, or from reading the effusions of other gifted editors?

The theory on which an act or contract in restraint of trade is prohibited by law is, as we understand it, based upon the supposed injury to the public by the restraint of its powers of free trade. It is contrary to a wise public policy that the public shou'd be prevented from freely buying and selling merchandize wherever it can do so to the best advantage. Such a policy does not extend so far as to prohibit a man from agreeing to devote his attention to particular lines of activity, unless such a limitation of his powers can be shown to amount to public injury.

It has been held in Michigan, Maryland, Massachusetts and other states that where the restraint contracted for appears to have been a just and honest purpose, for the protection of the legitimate interest of the party in whose favor it is imposed, reasonable as between the parties and not especially injurious to the public, the restraint will be held valid. *Hubbard* v. *Miller*, 27 Mich., 15; *Guerand* v. *Dandelet*, 32 Maryland, 561; *Pierce* v. *Woodward*, 23 Mass. (6 Pick.), 206.

An agreement not to engage in a particular trade or business in a certain place within a specified time is valid (*Arnold* v. *Kreutzer*, 67 Ia., 214). And if this is so, if a man can lawfully bind himself not to engage in business at all, why can he not also

lawfully bind himself not to engage in a part of a business, or not to use lessor's premises for the purpose of engaging in the sale of a rival's product?

Cases are numerous where parties have contracted not to engage for a number of years in the practice of law or of medicine in a certain place, and such contracts have generally been held valid.  Usually in such cases there has been a sale of the good will of the practice, but that is only a form of consideration for the contract, and other considerations would doubtless be equally valid.

In a New Jersey case, a rule was laid down, which seems to be fair and sound, viz.:

"The test to be applied in determining whether a restraint is reasonable or not is to consider whether it is only such as is necessary to afford a fair protection to the interest of the party in whose favor it is given and not so large as to interfere with the interest of the public." *Mandeville* v. *Harman*, 42 N. J., Eq., 185.

In the case at bar we have no evidence that the interest of the public will be in any degree interfered with by the performance of the contract in question.  It does appear that the interest of the brewing company requires some such protection as it had contracted for—the violation of the contract by defendant and his attempt to favor a rival of plaintiff at plaintiff's expense is sufficient proof of that necessity.

We are unable to find that any sound public policy requires the annulling of this contract or that the contract is to any unreasonable extent a contract in restraint of trade, but we do find that equity and fair dealing on the other hand require its enforcement.

There will therefore be a finding and decree for the plaintiff; an injunction will be granted as prayed for; judgment against defendant for costs and execution for costs awarded.