Gage, P.J.
 

 In these consolidated cases, plaintiff appeals as of right the trial court’s order granting defendants summary disposition with respect to plaintiffs claims seeking to enforce noncompetition agreements. We reverse and remand.
 

 
 *481
 
 i
 

 Plaintiff is a company that offers for sale to residential homeowners various home improvement products including windows, doors, and siding. Each individual defendant worked for plaintiff as an “independent sales representative” or “self-employed sales representative” until defendants all ceased working for plaintiff and directed their efforts toward establishing a competing home improvement business. Plaintiff filed separate complaints against each defendant, alleging that defendants misappropriated trade secrets and that defendants’ acts of participation in a competing business and disparagement of plaintiff “to its business contacts and accounts” and other independent sales representatives of plaintiff violated the terms of a noncompetition provision within the parties’ contract:
 

 Non-Complete [sic] agreement: In consideration of this agreement I the Representative hereby agree that upon termination of this agreement and not-withstanding the cause of termination of this agreement I the undersigned, shall not compete with the business of the Company, or its successors or assigns. The term “Non-Compete,” as used in this agreement means that I shall not directly or indirectly own, be employed by or work on behalf of any firms engaged in a business substantially similar or competitive with the company. I further agree that this agreement shall be extended only for the State of Michigan and shall be in full force and effect for a period of three (3) years from the date of my termination. Furthermore, the undersigned hereby agrees not to induce or attempt to induce any employee to leave the Company or interfere with or disrupt the Company relationship with any of its employees, customers, clients, suppliers, or vendors; or solicit or employ any person employed by the Company.
 

 
 *482
 
 Defendants filed counterclaims arguing that the non-competition agreements constituted unreasonable restraints of trade in violation of the Michigan Antitrust Reform Act (mara), MCL 445.771
 
 et seq.
 

 [1]
 

 After the trial court consolidated the cases, defendants sought partial summary disposition pursuant to MCR 2.116(C)(8) and (10) on the basis that the non-competition agreements were invalid under the mara, asserting that the mara plainly permits noncompetition agreements only within the scope of an employer-employee relationship. Defendants undisputedly worked for plaintiff as independent contractors. The trial court concurred with defendants, reasoning as follows:
 

 The question is, whether covenants not to compete may be lawfully exacted of independent contractors in the manner which is sought by the plaintiff in the present case and, to my knowledge, this is a matter of first impression under the current Michigan statute [the MARA], . . .
 

 The absence of specific case authority under the current statute naturally drives us back to the statutory language itself. And it has to be said in that connection that the statute seems clearly limited to employer-employee relationships. It would also seem that since the statute in question is an exception to the general policy which prohibits any agreement in restraintive [sic] trade, that as such it must be limited in its enforceability to the specific language that it employees [sic]. Had the Legislature intended a broader viability for covenants not to compete, it seems the Legislature could have expressed itself in language which would be easily understood and applied.
 

 The choice by the Legislature of employer-employee language seems, to the Court, to suggest that it did not intend for covenants not to compete to be enforceable in other
 
 *483
 
 contexts]. Since we have manifestly before us another context, namely, independent contractors and not employees, it seems to me that the statute is not available to bring legal force to a covenant not to compete in such a relationship and since the covenants not to compete are not recognized for independent contractor relationships, they are beyond the sweep of the exception and, therefore, caught by the general rule that any agreement in restraintive [sic] trade is a violation of this state’s policy and unlawful.
 

 Consequently, the court dismissed plaintiff’s claims alleging violations of the noncompetition agreements.
 

 Defendants later filed a motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff’s remaining claims that defendants interfered with plaintiff’s customer and employee relationships and misappropriated trade secrets. According to defendants, plaintiff had produced no evidence substantiating these claims. After plaintiff failed to respond to defendants’ motion, the trial court granted defendants summary disposition with respect to plaintiff’s remaining claims, which axe not at issue in this appeal.
 

 n
 

 A
 

 Plaintiff contends that the trial court erroneously granted defendants summary disposition because the court mistakenly interpreted the mara to preclude the utilization of noncompetition agreements beyond the employer-employee context. We review de novo the trial court’s summary disposition ruling.
 
 Maiden v Rozwood,
 
 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court apparently granted defendants sum
 
 *484
 
 mary disposition pursuant to MCR 2.116(C)(10),
 
 [2]
 
 which tests the factual sufficiency of a claim. In reviewing a motion based on this subrule, we consider the pleadings and relevant documentary evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether any genuine issue of fact exists to warrant a trial, or whether the moving party is entitled to judgment as a matter of law.
 
 Maiden, supra
 
 at 120.
 

 This case involves questions of statutory interpretation that we also review de novo.
 
 In re MCI Telecommunications Complaint,
 
 460 Mich 396, 413; 596 NW2d 164 (1999). The primary goal of statutory interpretation is to give effect to the intent of the Legislature, and the first step in that determination is to review the statutory language.
 
 Id.
 
 at 411. If the statutory language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted.
 
 Sun Valley Foods Co v Ward,
 
 460 Mich 230, 236; 596 NW2d 119 (1999). If reasonable minds can differ regarding its meaning, then judicial construction is appropriate.
 
 Adrian School Dist v Michigan Public School Employees’ Retirement Sys,
 
 458 Mich 326, 332; 582 NW2d 767 (1998). The language of a statute should be read
 
 *485
 
 in light of previously established rules of the common law, including common-law adjudicatory principles.
 
 B & B Investment Group v Gitler,
 
 229 Mich App 1, 7; 581 NW2d 17 (1998). A phrase or word that has acquired a unique meaning at common law is interpreted to have the same meaning when used in a statute dealing with the same subject.
 
 Daniel v Dep’t of Corrections,
 
 248 Mich App 95, 103; 638 NW2d 175 (2001).
 

 Our resolution of this case requires that we consider two provisions of the mara. Section 2 of the MARA, MCL 445.772, which was derived from the Uniform State Antitrust Act, sets forth the following general proposition: “A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful.”
 
 [3]
 
 A subsequent provision of the MARA that specifically addresses covenants not to compete § 4a, MCL 445.744a, states, in relevant part, as follows:
 

 (1) An employer may obtain from an employee an agreement or covenant which protects an employer’s reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of busi
 
 *486
 
 ness after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.
 

 The Legislature enacted § 4a more than two years after the rest of the MARA had taken effect, but provided that § 4a “shall apply to covenants and agreements which are entered into after March 29, 1985.” MCL 445.774a(2). While the language of these provisions at first glance appears plain, the parties and the trial court reached different conclusions regarding the meaning of these sections.
 

 B
 

 An understanding of the history of antitrust law in Michigan will enhance our analysis of the current provisions of the MARA. Long ago, before any statutory scheme of business regulation existed in Michigan, a common-law rule of reason governed what constituted a permissible restraint of trade. In
 
 Hubbard v Miller,
 
 27 Mich 15, 16-17 (1873), the Michigan Supreme Court considered the propriety of a noncom-petition agreement entered into when the plaintiff purchased the defendants’ well excavation business. The defendants had agreed “ ‘not to keep well-drivers’ tools or fixtures, and not to engage in the business of well-driving after’ ” the date of the sale.
 
 Id.
 
 at 17. In response to the defendants’ argument that the agreement represented an unenforceable restraint of trade, the Supreme Court explained as follows:
 

 
 *487
 
 It has sometimes been said by text writers, and even by courts, that all contracts in restraint of trade, whether general or limited, are
 
 prima facie
 
 void, or that they are to be presumed void, until it be shown, not only that there was an adequate consideration, but that the circumstances under which the contract was made were such as to render the restraint reasonable. But the rule to be drawn from a careful analysis of the adjudged cases and the reasons upon which they are founded, does not seem to us to involve any such presumption in the accurate or legal sense of the term, and may be more correctly stated to be, that all contracts in restraint of trade are void, if considered only in the
 
 abstract,
 
 and without reference to the situation or objects of the parties or other circumstances under or with reference to which they were made .... [Emphasis in original.]
 
 But if, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specifically injurious to the public, the restraint will be held valid.
 
 [Emphasis added.]
 
 [Id.
 
 at 19.]
 

 The Michigan Supreme Court’s application of a common-law rule of reason in passing on potential restraints of trade predated the 1910 adoption of the rule of reason by the United States Supreme Court in
 
 Standard Oil Co of New Jersey v United States,
 
 221 US 1; 31 S Ct 502; 55 L Ed 619 (1911). In
 
 Standard Oil,
 
 the United States Supreme Court interpreted the Sherman Act’s prohibition against restraints of trade, which currently is codified at 15 USC l.
 
 [4]
 
 The
 
 *488
 
 Supreme Court summarized the relevant preexisting common law and concluded as follows:
 

 Without going into detail, and but very briefly surveying the whole field, it may be with accuracy said that the dread of enhancement of prices and of other wrongs which it was thought would flow from the undue limitation on competitive conditions caused by contracts or other acts of individuals or corporations, led, as a matter of public policy, to the prohibition or treating as illegal all contracts or acts which were
 
 unreasonably restrictive of competitive conditions,
 
 either from the nature or character of the contract or act or where the surrounding circumstances were such as to justify the conclusion that they had not been entered into or performed with the
 
 legitimate purpose of reasonably forwarding personal interest and developing trade,
 
 but on the contrary were of such a character as to give rise to the inference or presumption that they had been entered into or done with the intent to do wrong to the general public and to limit the right of individuals, thus restraining the free flow of commerce and tending to bring about the evils, such as enhancement of prices, which were considered to be against public policy.
 

 * * *
 

 In view of the common law and the law in this country as to restraint of trade, which we have reviewed, and the illuminating effect which that history must have under the rule to which we have referred, we think it results:
 

 * * *
 

 
 *489
 
 C. And as the contracts or acts embraced in [§ 1 of the Sherman Act] were not expressly defined, since the enumeration addressed itself simply to classes of acts, those classes being broad enough to embrace every conceivable contract or combination which could be made concerning trade or commerce or the subjects of such commerce, and thus caused any act done by any of the enumerated methods anywhere in the whole field of human activity to be illegal if in restraint of trade, it inevitably follows that the provision necessarily called for the exercise of judgment which required that some standard should be resorted to for the purpose of determining whether the prohibition contained in the statute had or had not in any given case been violated. ... [I]t follows that
 
 it was intended that the standard of reason which had been applied at the common law
 
 and in this country in dealing with subjects of the character embraced by the statute
 
 was intended to be the measure used for the purpose of determining whether, in a given case, a particular act had or had not brought about the wrong against which the statute provided. [Standard Oil, supra
 
 at 58, 59, 60 (emphasis added).]
 

 The rule of reason remains vital to restraint of trade analysis under the Sherman Act. See
 
 State Oil Co v Khan,
 
 522 US 3, 10; 118 S Ct 275; 139 L Ed 2d 199 (1997) (observing that “[although the Sherman Act, by its terms, prohibits every agreement ‘in restraint of trade,’ this Court has long recognized that Congress intended to outlaw only unreasonable restraints”).
 

 The rule of reason remained valid in Michigan even after the Michigan Legislature enacted statutes regulating the formation of trusts and other restraints on trade, notwithstanding that the relevant statutory language did not explicitly refer to a reasonableness standard. In
 
 Staebler-Kempf Oil Co v Mac’s Auto Mart, Inc,
 
 329 Mich 351, 353; 45 NW2d 316 (1951), the Michigan Supreme Court considered the enforceability of a gasoline retailer’s agreement with an oil com
 
 *490
 
 pany to sell the oil company’s gasoline exclusively and at the same price as that charged by the other gasoline retailers that the oil company supplied. The applicable provision of the antitrust act of 1899, 1899 PA 255, § 1, as amended, 1948 CL 445.701, then in effect did not expressly describe a reasonableness standard, but provided, in relevant part, as follows:
 

 That a trust is a combination of capital, skill or arts by 2 or more persons, firms, partnerships, corporations or associations of persons, or of any 2 or more of them, for either, any or all of the following purposes:
 

 1. To create or carry out restrictions in trade or commerce;
 

 5. It shall hereafter be unlawful for 2 or more persons, firms, partnerships, corporations or associations of persons ... to make or enter into . . . agreements of any kind ... by which they shall bind . . . themselves not to sell, dispose of or transport any article or any commodity . . . below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity, or transportation between them ... so as to directly or indirectly preclude a free and unrestricted competition among themselves ... or by which they shall agree to pool, combine, or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected.
 
 Every such trust as defined herein is declared to be unlawful, against public policy and void.
 
 [Emphasis added.]
 

 The Supreme Court conceded that a literal application of the statute might render the parties’ agreement invalid, but explained that the enforceability of the agreement depended on its reasonableness:
 

 
 *491
 
 The statute, if read literally, would seem to support the defendant’s contentions. However, the statute does not define restraint of trade, and the definition has been judicially supplied. It has long been held that a contract would not be construed as in restraint of trade unless the restraint was unreasonable.
 
 Standard Oil Co of New Jersey,
 
 [supra];
 
 People ex rel Attorney General v Detroit Asphalt Paving Co,
 
 244 Mich 119 [221 NW 122 (1928)].
 
 [Staebler-Kempf supra
 
 at 356-357.]
 

 The
 
 Staebler-Kempf
 
 Court,
 
 id.
 
 at 357, then quoted and applied the reasonableness standard set forth in
 
 Hubbard, supra
 
 at 19.
 

 As we have indicated, the Michigan Supreme Court in
 
 Hubbard, supra,
 
 applied the rule of reason to determine the enforceability of a noncompetition agreement even before the enactment of statutes regulating antitrust practices, and the Supreme Court in
 
 Staebler-Kempf, supra,
 
 applied the rule of reason in addressing the validity of a restraint on trade under the then existing statutory scheme. Until the enactment of the MARA, however, the Michigan statutes explicitly set forth a general prohibition against non-competition agreements irrespective of their reasonableness. In 1905 PA 329, § 1, 1948 CL 445.761, the Legislature adopted a general rule rendering illegal non-competition agreements:
 

 All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.
 

 The Legislature authorized exceptions to the general prohibition against noncompetition agreements when
 
 *492
 
 the agreements arose in the context of a business transfer or between an employer and his employees.
 

 This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employe[e] a list of customers or patrons, commonly called a route list, within certain territory in which such employe [e] is to work, in which contract the employe [e] agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services. [1905 PA 329, § 6, as amended by 1917 PA 171, 1948 CL 445.766.]
 

 The general statutory prohibition against noncompetition agreements, irrespective of their reasonableness, existed until the mara became effective in 1985.
 

 The mara repealed the statutory provisions addressing noncompetition agreements and, at least when enacted, contained no sections specifically addressing noncompetition agreements. Accordingly, as this Court explained in
 
 Compton v Joseph Lepak, DDS, PC,
 
 154 Mich App 360; 397 NW2d 311 (1986), the general antitrust provision of the mara, MCL 445.772, and the rule of reason historically employed thereunder, governed the enforceability of all agreements in restraint of trade, including noncompetition agreements. In
 
 Compton,
 
 this Court considered the validity of a noncompetition clause within an “independent contract of employment” between the defendant dental service corporation and the plaintiff dentist.
 
 Id.
 
 at
 
 *493
 
 362-363. The Court observed that in light of the repeal of the specific provisions formerly controlling the question of the validity of a noncompetition agreement, MCL 445.761 and 445.766, § 2 of the mara constituted the controlling provision.
 
 Compton, supra
 
 at 365. After noting that § 2 of the mara was derived from the Uniform State Antitrust Act, which adopted Sherman Act language and standards of legality, the Court reasoned as follows:
 

 Unlike former MCL 445.761 . . . , which declared void any agreement not to compete, whether reasonable or unreasonable,
 
 § 2 of
 
 mara
 
 only makes unlawful any contract which is an unreasonable restraint of trade,
 
 as under the common law or § 1 of the Sherman Act or monopolized trade under § 2 of the Sherman Act.
 
 [Compton, supra
 
 at 366 (emphasis added).]
 

 Although the noncompetition agreement at issue in
 
 Compton
 
 contained no limitation of its duration, this Court, citing the weight of authority from other jurisdictions, federal precedent, and Michigan law, concluded that the agreement should be enforced to the extent reasonable according to “the developed common law.”
 
 Id.
 
 at 367-368. We reiterate that the Court reached its conclusion despite that § 2 of the mara makes no explicit reference to a standard of reasonableness.
 

 We find it abundantly clear therefore that at the time of the
 
 Compton
 
 decision, the instant noncom-petition agreement would have been deemed enforceable according to the common-law rule of reason embodied within § 2 of the mara. The general restraint of trade provision within § 2 of the mara continued to embody the common-law rule of reason.
 
 Daniel, supra
 
 at 103;
 
 Compton, supra
 
 at 366.
 

 
 *494
 
 Defendants, however, argued, and the trial court agreed, that an amendment of the MARA altered the analysis contained in
 
 Compton.
 
 In 1987, the Legislature enacted § 4a of the MARA, which, in subsection 1, MCL 455.774a(l), explicitly permits reasonable non-competition agreements between employers and employees. The trial court reasoned that the Legislature’s failure to authorize explicitly within § 4a non-competition agreements arising in other contexts, including between employers and independent contractors, reflected the Legislature’s intent that all other noncompetition agreements would constitute unlawful restraints of trade pursuant to § 2 of the MARA.
 

 The existing legislative history indicates that “the repeal of the old law left a gap in” the MARA and that § 4a was proposed “to clarify . . . the permissible uses of restrictive covenants for employees who leave employment” under the MARA. House Legislative Analysis, HB 4072, December 18, 1987. The argument against the bill deemed § 4a unnecessary in light of the existing common-law rule of reason.
 
 [5]
 
 Apparently,
 
 *495
 
 however, a majority of the Legislature’s members felt § 4a necessary to clarify whether noncompetition agreements between employers and employees “were . . . legal or not and under what conditions.” House Legislative Analysis,
 
 supra.
 

 As our review of the history of restraint of trade law in Michigan makes clear, the common law in Michigan contemplated the enforceability of noncom-petition agreements that qualified as reasonable.
 
 Hubbard, supra
 
 at 19;
 
 Cardiology Associates of Southwestern Michigan, PC v Zencka,
 
 155 Mich App 632, 636; 400 NW2d 606 (1985). The Legislature’s enactment of former MCL 445.761 altered the common-law rule from 1905 until 1985, when the MARA replaced it.
 
 Cardiology Associates, supra
 
 at 636-637. The Legislature’s repeal of and decision not to reenact former MCL 445.761, which was in derogation of the common law, clearly demonstrates the Legislature’s intent to revive the common-law rule set forth in
 
 Hubbard, supra
 
 at 19, that the enforceability of noncompetition agreements depends on their reasonableness.
 
 People v Reeves,
 
 448 Mich 1, 8; 528 NW2d 160 (1995), superseded by statute on other grounds as recognized in
 
 People v Nowack,
 
 462 Mich 392, 400-401; 614 NW2d 78 (2000) (explaining that “[t]he repeal of a statute revives the common-law rule as it was before the statute was enacted”).
 

 In reaching its conclusion that the Legislature’s enactment of a provision specifically authorizing only noncompetition agreements entered into within the employer-employee context signified that the Legislature intended to prohibit noncompetition agreements between employers and independent contractors, the trial court apparently relied on the statutory interpretation maxim that “the expression of one thing is the
 
 *496
 
 exclusion of another.” This maxim only provides an aid to interpreting legislative intent; however, it cannot be employed where its application would defeat otherwise evident legislative intent.
 
 Grand Rapids Employees Independent Union v Grand Rapids,
 
 235 Mich App 398, 406; 597 NW2d 284 (1999). The Legislature’s repeal of former MCL 445.761 and the commentary accompanying § 2 of the Uniform State Antitrust Act,
 
 [6]
 
 with which the Legislature replaced the prior act, plainly indicate the Legislature’s intent to return to the common-law rule of reason with respect to noncompetition agreements. We emphasize that absolutely nothing -within the legislative history of § 4a or within the language of that section itself suggests that the Legislature intended to prohibit, as it had in 1905, the application of the common-law rule of reason to noncompetition agreements. We are convinced that had the Legislature intended its enactment of § 4a to generally prohibit all noncompetition agreements other than those between employers and employees, only two years after having repealed such a general prohibition against noncompetition agreements with the enactment of the mara, the Legislature would have done so expressly with a provision similar to 1948 CL 445.761.
 

 Furthermore, our acceptance of the conclusion reached by the trial court would categorically render unenforceable any other conceivable noncompetition agreement. For example, the seller and purchaser of a
 
 *497
 
 business would not be able to contract not to compete against each other even though reasonable non-competition agreements between such buyers and sellers have been upheld in Michigan for well over a century.
 
 Hubbard, supra
 
 at 21 (upholding a reasonably constructed noncompetition agreement arising in the business sale context, consistent with “principles as recognized by all the authorities for the last one hundred and fifty years, at least”); see also 1948 CL 445.766 (excepting from the then existing general prohibition against noncompetition agreements those agreements that “protected] the vendee ... of a trade pursuit, avocation, profession or business, or the good will thereof”). We reject the suggestion that with its enactment of § 4a of the MARA the Legislature intended by implication to prohibit all noncompetition agreements entered into outside the employer-employee context, including those reasonable covenants recognized and accepted apparently for at least 279 years, see
 
 Hubbard, supra
 
 at 21. See
 
 Wayne Co Prosecutor v Dep’t of Corrections,
 
 451 Mich 569, 576; 548 NW2d 900 (1996) (noting this Court “begins with the axiom that repeals by implication are disfavored” and presumes, in most circumstances, that “if the Legislature had intended to repeal a statute or statutory provision, it would have done so explicitly”);
 
 B & B Investment, supra
 
 at 7 (observing that well-settled common-law principles are not to be abolished by implication).
 

 We conclude that the trial court erred in construing §§ 2 and 4a of the MARA as a prohibition against all noncompetition agreements except those between employers and employees and in failing to apply the common-law rule of reason embodied within § 2 of the MARA when ruling with respect to the enforce
 
 *498
 
 ability of the noncompetition agreements between plaintiff employer and defendant independent contractors.
 
 Compton, supra
 
 at 364-368.
 

 We reverse the trial court’s order granting defendants summary disposition and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 Defendants Hoogenstyn and Sanford additionally asserted that plaintiff owed them commissions.
 

 [2]
 

 The trial court’s order granting defendants partial summary disposition stated that it was based on MCR 2.116(C)(10). While the trial court indicated at the hearing on defendants’ motion that it found summary disposition appropriate pursuant to MCR 2.116(C)(8), we note that the trial court’s ruling rested on the fact that defendants were independent contractors of plaintiff, which fact defendants proved by referring to documents outside the pleadings, i.e., to plaintiffs responses to defendants’ requests to admit. Accordingly, we construe defendants’ motion as being granted pursuant to MCR 2.116(C)(10).
 
 Krass v Tri-County Security, Inc,
 
 233 Mich App 661, 664-665; 593 NW2d 578 (1999).
 

 [3]
 

 Section 2 of the mara was derived from section 2 of the Uniform State Antitrust Act, the comment to which provides, in relevant part, as follows:
 

 This section gathers together and proscribes all concerted or collusive conduct in unreasonable restraint of trade, as under the common law and section 1 of the Sherman Act [15 USC 1], and to monopolize trade, as under section 2 of the Sherman Act [15 USC 2]. In adopting the Sherman Act terms, “contract combination, or conspiracy,” this section is designed to cover all concerted activities, formal or informal, including sale, contract to sell, purchase, contract to purchase, lease, contract to lease, license, contract to license, trust, pool, or holding company. The adoption of Sherman Act language establishes its general standards of legality, provides needed flexibility, and makes available to state courts the relevant body of federal precedent. [7C ULA (Master Edition, 2000), p 357.]
 

 [4]
 

 The language of § 1 of the Sherman Act quoted in
 
 Standard Oil, supra
 
 at 49-50, appears substantially similar to the current language of 15 USC 1. Section 1 of the Sherman Act currently provides as follows:
 

 
 *488
 
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.
 

 [5]
 

 The detractors of HB 4072 explained as follows:
 

 The bill is not necessary. The public interest and rights of employees and employers would be sufficiently well served, as they are in many other states, by the common law test of reasonableness, which courts would employ in the absence of a specific statute on post-employment covenants. This test would weigh the various interests of employer, employee, and the public on a case-by-case basis. As articulated in a dissenting opinion filed with a 1976 Michigan Supreme Court decision, “a non-competition forfeiture clause is a reasonable restraint of trade only if it 1) is no greater than necessary for the protection of the legitimate interests of the employer; 2) does not impose undue hardship on the employee; and 3) is not injurious to the interests of the public.” Indeed, the bill’s vagueness and reliance on a general test of reasonableness ensure that disputes will continue to arise and be resolved by the courts. [House Legislative Analysis,
 
 supra.]
 

 [6]
 

 As the comment explains, the drafters of § 2 of the Uniform State Antitrust Act modeled it on the Sherman Act’s restraint of trade provision, intending to "make[] available to state courts the relevant body of federal precedent.” 7C ULA,
 
 supra
 
 at 357. As we have examined, the rule of reason has constituted a part of decisions under the Sherman Act for nearly one hundred years.