VOGUE CLEANERS & DYERS, INC., *v.* BERKOWITZ.

1. MONOPOLIES—EMPLOYMENT CONTRACTS—RESTRAINT OF TRADE.

   Contract under which plaintiff corporation engaged in cleaning business agreed to purchase stock in itself from defendant wholesale driver who agreed not to solicit or service work, directly or indirectly, from plaintiff's listed customers for a period of three years after termination of employment *held*, a contract for the sale of an interest in the business and customers rather than an employment contract within the provisions of statute relative to contracts in restraint of trade (3 Comp. Laws 1929, § 16667 and § 16672, as amended by Act No. 202, Pub. Acts 1935).

2. CONTRACTS—STATUTES—CORPORATIONS—SALE OF STOCK.

   In the absence of statutory provisions governing the subject, a seller of corporate stock may agree not to engage in a business which would compete with that of the corporation.

3. INJUNCTION—CONTINUED BREACH OF CONTRACT—PARTNERSHIP—EVIDENCE.

   Plaintiff corporation, engaged in cleaning business, which purchased shares of its stock from defendant wholesale driver under a contract whereby he agreed not to solicit or service work, directly or indirectly, from plaintiff's listed customers for a period of three years after termination of employment was entitled to injunction restraining defendant from continued breach of his contract notwithstanding work done for plaintiff's former customer was performed by partnership of which defendant was a member and there is no evidence that defendant solicited such customer after leaving plaintiff's employ.

4. SAME—CONTINUED BREACH OF CONTRACT—DAMAGES.

   In suit to enjoin continued breach of contract not to solicit or service work for plaintiff's listed customers and for damages, record *held*, to establish a breach of contract and that plaintiff was entitled to such damages as were occasioned thereby.

5. SAME—REMAND FOR DAMAGES—COSTS.

> Upon reversal of decree dismissing bill to enjoin continued breach of contract not to solicit or service plaintiff's listed customers and remand for determination of damages, costs of both courts are ordered to await such determination.

Appeal from Wayne; George (Fred W.), J., presiding. Submitted January 4, 1940. (Docket No. 59, Calendar No. 40,884.) Decided March 15, 1940.

Bill by Vogue Cleaners & Dyers, Incorporated, a Michigan corporation, against Morris Berkowitz to restrain the soliciting of business from a customer and for money damages for breach of contract. Bill dismissed. Plaintiff appeals. Reversed.

*Arthur L. Robbins,* for plaintiff.

*Harry N. Grossman,* for defendant.

SHARPE, J. Plaintiff is a Michigan corporation engaged in the cleaning business in the city of Royal Oak, Michigan. Its business is conducted through the medium of drivers who call for and deliver the clothes and garments to be cleaned to its customers and patrons. Prior to January 11, 1936, defendant was the owner of 26 shares of stock in plaintiff corporation and was employed by plaintiff as a "wholesale" driver; and on that date plaintiff and defendant entered into a written agreement whereby plaintiff agreed to purchase the shares of stock from defendant for the sum of $4,000.

The agreement provided:

"4. It is expressly agreed and understood by and between the parties hereto, that as a further consideration for the purchase of the said shares of stock by the party of the first part, the party of the second part does hereby agree that for a period of

three years from and after the date of the termination of his employment with the party of the first part, he will refrain from in any way soliciting, servicing, calling for or delivering to any cleaning and dyeing work, directly or indirectly, on behalf of himself or on behalf of any other person, persons, firm or corporation, any customers of the party of the first part who are listed on the books of the party of the first part as customers on the date that such employment is terminated.

"5.   The party of the first part does hereby hire the said party of the second part as a wholesale driver, and in consideration of the same, the party of the second part agrees to work for the party of the first part for the same rate of compensation as is paid to other wholesale drivers in the employment of the party of the first part.

"6.   It is further expressly agreed and understood by and between the parties hereto that the employment of the party of the second part shall not be terminated before and until the party of the first part shall pay each and every instalment due to party of the second part, as aforesaid, and that after party of the first part shall have fully discharged its obligations to party of the second part it shall then have the right, privilege and option to terminate the employment of the second party, or to enter into such other or different agreement with the party of the second part as it shall desire; provided, however, that if party of the second part shall conduct himself in such manner as shall be detrimental to the best interests of the party of the first part, then, in such event, party of ·the first part shall have the right to terminate the employment of the party of the second part, anything to the contrary, hereinbefore stated, notwithstanding; the obligation of the party of the first part to pay any sums due to party of the second part to remain in full force and effect."

In January or February, 1937, defendant left plaintiff's employ and became associated as a partner in the Metropolitan Cleaners. On August 1, 1938, Zigmund Slaybeck, doing business as Northfield Cleaners, purchased a 10 per cent. interest in the Metropolitan Cleaners. About this time, the Metropolitan Cleaners began doing business with the Northfield Cleaners who had been giving its business to plaintiff since 1931 and was so listed on plaintiff's books at the time defendant left plaintiff's employ. The volume of business transacted weekly between plaintiff and Northfield Cleaners averaged approximately $75.

Plaintiff filed its bill of complaint to restrain defendant from transacting any further business with the Northfield Cleaners and for damages for the loss suffered as a result of defendant's breach of contract. The trial court found as a fact that Zigmund Slaybeck, doing business as Northfield Cleaners, had discontinued with the services of plaintiff company owing to dissatisfaction with the work done by plaintiff and later on became associated with the Metropolitan Cleaners as partner, investing $1,500, from which investment he was entitled to a 10 per cent. interest; and that defendant had not breached the conditions of his contract.

Plaintiff appeals and contends that the agreement between plaintiff and defendant was not an employment contract within the provisions of 3 Comp. Laws 1929, § 16672, as amended by Act No. 202, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 16672, Stat. Ann. § 28.66); and that defendant could not circumvent his agreement with plaintiff by the device of first conveying a 10 per cent. interest in the business to one of plaintiff's customers. It is the claim of defendant that the contract of the parties is void

under 3 Comp. Laws 1929, § 16667 (Stat. Ann. § 28.61), which reads as follows:

"All agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void." And that under Act No. 202, Pub. Acts 1935, which reads as follows: "This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employee a list of customers or patrons, commonly called a route list, within certain territory in which such employee is to work, in which contract the employee agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of ninety days after the termination of such contract or services," the limitation on the right of an employee to solicit business from his former employer's customers is for a period not to exceed 90 days as the agreement constitutes a relationship of employer and employee; and that there was no breach of contract at least during the 90-day period.

The initial problem is to determine the nature of the contract entered into between plaintiff and defendant, *i. e.*, whether the contract was a sale of an interest in the business and customers

or an employment contract within the provisions of 3 Comp. Laws 1929, § 16672, as amended by Act No. 202, Pub. Acts 1935. It is our opinion that the agreement between the parties was for the sale of an interest in the business and customers; and, as an incident to such sale, plaintiff agreed to retain defendant in its employ for a stated period of time.

It is a general rule that, in the absence of statutory provisions governing the subject, a seller of corporate stock may agree not to engage in a business which would compete with that of the corporation. See *Up River Ice Co.* v. *Denler*, 114 Mich. 296 (68 Am. St. Rep. 480); *Buckhout* v. *Witwer*, 157 Mich. 406 (23 L. R. A. [N. S.] 506).

It is undisputed that the partnership of which defendant is a member is doing Slaybeck's cleaning; and that Slaybeck was a customer of plaintiff when defendant left the plaintiff's employ in January or February, 1937. Although there is no evidence that defendant solicited this customer after he ceased his employ with plaintiff, the fact that the business in which defendant is engaged is carried on by a partnership does not prevent an injunction issuing against the continued breach of the contract by the defendant.

In *Hubbard* v. *Miller*, 27 Mich. 15 (15 Am. Rep. 153), the defendants entered into an agreement with the purchaser of their well-driving business that they would not engage in that business. Thereafter one of the defendants formed a partnership with one Akeley, a disinterested third party, and the partnership proceeded to put down wells. The court enjoined the defendant and said:

"The defendants, Miller and Decker, are bound individually, as well as jointly, by the direct effect of the contract. But Akeley, not being a party to the contract, is bound only as a partner of Miller

(he would be equally bound if a partner of Decker), and during the continuance of such partnership; and upon its dissolution, would not be individually bound by the contract.''

In our opinion there was a breach of the contract by defendant and plaintiff·is entitled to such dam-· ages as were occasioned by the breach. Under the opinion of the trial court no determination of damages was made.

The cause is reversed and referred to the trial court for such determination, if any, with costs in both courts to await such determination.

Bushnell, C. J., and Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.