BOGGS v COUTURIER

Docket No. 48899. Submitted November 4, 1981, at Lansing.—Decided May 4, 1982.

Plaintiff, George L. Boggs, began practicing veterinary medicine at the Clay-Mar Veterinary Clinic in Owosso in January, 1969. Defendant, David S. Couturier, began working for plaintiff in January, 1974. On December 18, 1975, the doctors entered into an agreement to operate the clinic as a limited partnership under the name of Clay-Mar Veterinary Clinic, with plaintiff as a general partner and defendant as a limited partner. The limited partnership agreement went into effect January 1, 1976. Plaintiff held a 76% interest in the business and defendant held the remaining 24% interest. The defendant's capital contribution consisted of an initial payment of $2,000 and monthly payments of $500, which he paid from January, 1976, through April, 1979. Plaintiff executed a bill of sale to the partnership of all assets of his prior sole proprietorship for his capital contribution. The partnership agreement set out the termination procedure which gave any partner the right to retire from the partnership by giving 90 days written notice. The agreement provided that, upon termination of the partnership, the plaintiff would have the privilege to continue doing business under the name of Clay-Mar Veterinary Clinic and the use of the clinic's telephone number. It also provided that upon termination or dissolution of the partnership, neither of the parties shall engage in a like or similar business within 15 miles of the present location and for a period of 3 years from the date of such termination or dissolution, except that George L. Boggs might remain in the present location of the partnership business. It further provided that, in the event the limited partner withdraw before the expiration of five years, he would be entitled to his original investment and interest thereon at

REFERENCES FOR POINT IN HEADNOTE

54 Am Jur 2d, Monopolies and Restraints of Trade §§ 103, 522, 529, 531.

Validity and construction of contractual restrictions on right of medical practitioner to practice, incident to sale of property. 62 ALR3d 918.

the rate of five (5%) percent per annum. Defendant gave notice of his withdrawal effective June 15, 1979. Plaintiff brought an action in the Shiawassee Circuit Court alleging breach of the covenant not to compete. Defendant filed an answer asserting, among other things, an affirmative defense that the covenant not to compete was in violation of statutes pertaining to restraint of trade. The court, Harry P. Newblatt, J., granted partial summary judgment for plaintiff and against defendant on the issue of breach of the covenant not to compete. Defendant appealed. *Held:*

A contract by which a person agrees not to engage in a profession or business is illegal except where the only object of the restraint imposed by the contract is to protect the vendee or transferee of a profession or business, or its good will, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly. The contract does not fall within any exception to the general rule.

Reversed and remanded.

Commerce — Restraint of Trade — Covenant Not to Compete.

A contract by which a person agrees not to engage in a profession or business is illegal except where the only object of the restraint imposed by the contract is to protect the vendee or transferee of a profession or business, or its good will, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly (MCL 445.761, 445.766; MSA 28.61, 28.66).

*Des Jardins, Des Jardins & Mourhead,* for plaintiff.

*McLellan, Schlaybaugh & Whitbeck* (by *Stephen D. Winter),* for defendant.

Before: Bronson, P.J., and T. M. Burns and J. T. Corden,* JJ.

J. T Corden, J. Defendant, Dr. David Couturier, appeals as of right from an order entered September 19, 1980, granting plaintiff, Dr. George Boggs, partial summary judgment and denying defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

partial summary judgment. The effect of the order was to deny defendant's affirmative defense that Article VIII of the parties' partnership agreement, which restricted defendant's practice of veterinary medicine upon termination of the partnership, was void and unenforceable because it violated MCL 445.761; MSA 28.61.

Plaintiff began practicing veterinary medicine at the Clay-Mar Veterinary Clinic in Owosso in January, 1969. Defendant graduated from Michigan State University Veterinary School in 1973 and began working for plaintiff in January, 1974. On December 18, 1975, the doctors entered into an agreement to operate the clinic as a limited partnership under the name of Clay-Mar Veterinary Clinic, with plaintiff as a general partner and defendant as a limited partner. The limited partnership agreement went into effect January 1, 1976. Plaintiff held a 76% interest in the business and defendant held the remaining 24% interest. The defendant's capital contribution consisted of an initial payment of $2,000 and monthly payments of $500, which he paid from January, 1976, through April, 1979. Plaintiff executed a bill of sale to the partnership of all assets of his prior sole proprietorship for his capital contribution.

Article VI of the partnership agreement set out the termination procedure which gave any partner the right to retire from the partnership by giving 90 days written notice. This article also provided that, upon termination of the partnership, the plaintiff would have the privilege to continue doing business under the name of Clay-Mar Veterinary Clinic and the use of the clinic's telephone number.

Article VIII, a covenant not to compete, provided that:

"In consideration of the mutual benefits inuring to each of the parties hereto, the adequacy of which the parties hereby acknowledge, specifically agree that upon termination or dissolution of the partnership, neither of the parties shall engage in a like or similar business within fifteen (15) miles of the present location and for a period of three (3) years from the date of such termination or dissolution; excepting and provided, however, that Gᴇᴏʀɢᴇ L. Boɢɢs shall be privileged to remain in the present location of the partnership business."

Article IX provided in part:

"5. After the partnership shall have existed for five (5) years, and in the event any limited partner desires to sell his interest or withdraw, then such withdrawing limited partner shall be entitled to payment equivalent to the book value of his partnership interest as reflected in the immediate past financial statement of the partnership. However, any withdrawal from the partnership prior to the five (5) year period, shall only entitle the withdrawing limited partner to his original investment and interest thereon at the rate of five (5%) percent per annum.

"6. The limited partner herein, Dᴀᴠɪᴅ S. Coᴜᴛᴜʀɪᴇʀ, after or upon completion of five (5) years from the date hereof, shall have an option to purchase an additional nine and one-third (9-1/3%) percent interest in the partnership herein, based on the then book value of the partnership as reflected in the immediate past financial statement of the partnership; which option shall be exercised within one (1) year following the completion of the first five (5) year period of the partnership."

The parties engaged in the general practice of veterinary medicine pursuant to the agreement until April 26, 1979, when defendant sent plaintiff written notice of his intention to withdraw from the limited partnership. The parties agreed that defendant would continue in the practice until

June 15, 1979, to permit plaintiff time to employ a new veterinarian, and that, upon dissolution, the partnership owed defendant $19,650 as return of his original capital investment, defendant having waived accrued interest.

Although this case has a complex procedural history, it is unnecessary to recite the same in detail since ultimately the trial court upon stipulated material facts found that Article VIII of the partnership agreement did not violate MCL 445.761; MSA 28.61, and entered partial summary judgment for plaintiff. Defendant appeals as of right.

The only question before this Court is whether the covenant not to compete is lawful. At common law a covenant not to compete was void if it was a "naked" restraint, but it could be lawful if it was an ancillary covenant, *i.e.,* connected to the main purpose of a lawful contract and necessary to protect the covenantee in the enjoyment of the legitimate benefits of the contract.[1] MCL 445.761; MSA 28.61[2] generally prohibits all agreements and contracts in restraint of trade. The scope of this broad prohibition is limited, however, by MCL 445.766; MSA 28.66, which provides for exceptions to the general rule:

"This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and

---

[1] See Alterman, *Trade Regulation in Michigan: Covenants Not to Compete,* 23 Wayne L Rev 275 (1977).

[2] "All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services."

On appeal defendant argues that Article VIII of the partnership agreement violates the prohibition against restraints of trade and is not within the statutory exceptions because there was no sale of a business or of its good will. Plaintiff, on the other hand, argues that a transfer between partners is sufficient to support a covenant not to compete, asserting that the transfer was a. sale of defendant's interest in the veterinary clinic.

We agree with defendant's argument that there was no sale of good will here. "Good will" refers to

"those intangible advantages or incidents which are impersonal and attached to the thing conveyed; the favor which the management of the business had won from the public and the probability the old customers would continue their patronage in the future. Good will is based upon the prospective profits to result from voluntarily continued patronage of the public. It indicates that value which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business." (Citations omitted.) *Colton v Duvall,* 254 Mich 346, 348-349; 237 NW 48 (1931).

It appears from the facts in this case that the defendant did not have any good will in the Clay-Mar Veterinary Clinic to transfer to the plaintiff.

Rather, all the good will in the clinic remained with plaintiff who began using the name Clay-Mar Veterinary Clinic when he commenced his practice in 1969; defendant did not become a partner in the clinic until 1976. The partnership agreement gave the plaintiff, upon dissolution of the partnership, the privilege of remaining in the present location of the partnership business under the name of Clay-Mar Veterinary Clinic and the use of the clinic's telephone number. There was, therefore, no good will linked to the defendant's participation in the partnership which he could transfer to the plaintiff upon dissolution.

Plaintiff also argues that the defendant's transfer of his interest in the partnership qualifies for the exception for the transfer of a business under MCL 445.766; MSA 28.66. The parties agreed that upon dissolution the partnership owed defendant $19,650. Plaintiff maintains that this was a sale of a business interest; defendant responds that this payment was merely a return of the defendant's capital investment.

In *Owens v Hatler,* 373 Mich 289; 129 NW2d 404 (1964), the parties were partners in a business that manufactured and marketed therapeutic turbulator liquid massage machines for treatment of horses' legs. The defendant sold his interest in the partnership for $5,000 and signed an agreement not to compete in that industry anywhere in the United States for five years. Injunctive relief was granted restraining the member of the original partnership and three other defendants from operating such a business. On appeal, the main issue was whether the restraint was too broad in geographic scope. The Supreme Court held that it was not. Plaintiff cites *Owens* for the proposition that a transfer between copartners is sufficient to support

a covenant not to compete. We note, however, that in *Owens* the agreement not to compete was entered into upon dissolution of the partnership. It is likely that the consideration received by the defendant for his share of the partnership in that case included compensation for his agreement not to compete. In this case, on the other hand, the noncompetition agreement was executed upon the formation of the partnership. The defendant's compensation upon dissolution was measured by his capital contribution to the partnership. Under such circumstances it does not appear that the defendant received any consideration for his agreement not to compete with the plaintiff.

On the facts of this case we defer to and utilize this Court's holding in *Bernstein, Bernstein, Wile & Gordon v Ross,* 22 Mich App 117; 177 NW2d 193 (1970). The factual situation there is strikingly similar to this case. In *Bernstein* the defendant, after working two years for the plaintiff accounting firm, entered a partnership agreement by which he purchased a 5% interest in the partnership for $23,456.09. The agreement provided for payment to be made out of defendant's share of the profits. A noncompetitive clause prohibited a partner, upon withdrawal, from practicing public accounting for three years within a 50-mile radius. Defendant terminated his relationship with the partnership after one year. At that time his accumulated earnings were $6,625.81. The plaintiffs had the right to repurchase his 5% interest for only 2-1/2% of his capital account.

In *Bernstein,* the trial court declared the covenant not to compete unlawful. On appeal, this Court affirmed, relying heavily on the facts:

"Defendant was plaintiffs' employee; he received some training from plaintiffs, and moved to Lansing. He had

no clients of his own. Later, he purchased a share of the partnership and became a member. The statute does not favor covenants not to compete except where a business or profession is sold, including its good will. Defendant, being a partner with a strict fiduciary relationship to the firm, possessed no singular or separate business, profession or good will to sell the partnership." 22 Mich App 117, 122-123.

This Court's holding in *Bernstein* has been criticized, it having been suggested that it should be limited to its facts.[3] Even if we grant *Bernstein* narrow application, however, we hold that it should be followed in this case. Dr. Couturier, like the defendant in *Bernstein,* was a recent entrant into his profession. He worked for the plaintiff as an employee before entering the partnership agreement. Under the terms of the agreement, the plaintiff had a right, upon dissolution, to every interest identifiable with the clinic, *e.g.,* the right to do business in the same location, the right to use the name "Clay-Mar Veterinary Clinic", and the telephone number. Furthermore, according to the partnership agreement, the defendant was entitled only to his original investment upon withdrawal during the first five years of the partnership. He would not benefit from any increase in the book value of his interest in the partnership. Rather than providing for a sale of his interest, the partnership agreement was structured to "undo" his membership in the partnership in that only a retrieval of capital contribution was provided.

We conclude that the transaction between the parties here was not encompassed by or accorded the protection statutorily contemplated for the sale or transfer of a profession or business, or the

---

[3] See Alterman, *supra,* 291-292.

good will thereof, for a valuable consideration, MCL 445.766; MSA 28.66. The covenant in question was accordingly violative of MCL 445.761; MSA 28.61. The trial court erred in granting partial summary judgment for the plaintiff on this issue, denying defendant's first affirmative defense. We reverse the grant of partial summary judgment for the plaintiff and remand for entry of a partial summary judgment in favor of the defendant's first affirmative defense.

Reversed and remanded.