CARDIOLOGY ASSOCIATES OF SOUTHWESTERN MICHIGAN, PC
v ZENCKA

Docket No. 85113. Submitted October 3, 1985, at Grand Rapids. Decided November 26, 1985.

In September, 1983, plaintiff, Cardiology Associates of Southwestern Michigan, P.C., and defendant, Allen E. Zencka, M.D., entered into an employment contract a term of which required defendant to purchase one-third of the outstanding stock from the two other stockholders. It further provided for redemption of the stock according to a separate stock redemption agreement in the event of defendant's death or termination of employment. The stock redemption agreement contained a covenant not to compete in the event the stockholder had not been a stockholder for two years. Defendant's employment was terminated on April 30, 1985. Plaintiff brought an action in the Berrien Circuit Court to enforce the covenant not to compete. The court, Julian E. Hughes, J., granted summary disposition for defendant for lack of a genuine issue of material fact such that defendant was entitled to a judgment as a matter of law. Plaintiff appealed.

The Court of Appeals *held:*

1. The law existing at the time a covenant not to compete is entered into is applicable to determine the validity of the covenant.

2. Under the law in existence in September, 1983, covenants not to compete were void as against public policy and the covenant in question did not come within any statutory exception.

Affirmed.

REFERENCES

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, §§ 542 *et seq.*

Validity and construction of contractual restrictions on right of medical practitioner to practice, incident to employment agreement. 62 ALR3d 1014.

Conflict of laws as to validity, enforceability, and effect of ancillary restrictive covenant not to compete, in contract of employment or for sale of business. 70 ALR2d 1292.

COVENANTS — COVENANT NOT TO COMPETE — ANTITRUST REFORM ACT — CHOICE OF LAWS.
The law existing at the time a covenant not to compete is entered into is applicable to determine the validity of the covenant (MCL 445.788; MSA 28.70[18]).

*Kinney, Cook, Lindenfeld & Kelley* (by *William J. Broaksma*), for plaintiff.

*Spelman, Taglia, Meek, Burdick & Saver* (by *Paul A. Taglia*), for defendant.

Before: DANHOF, C.J., and MACKENZIE and J. L. BANKS,* JJ

PER CURIAM. Plaintiff appeals as of right from the order of summary disposition, MCR 2.116(C)(10), entered by the Berrien Circuit Court for lack of a genuine issue as to any material fact such that defendant is entitled to judgment as a matter of law. We affirm.

This appeal concerns the enforceability of a covenant not to compete contained in a stock redemption agreement into which the parties entered pursuant to an employment contract. Plaintiff is a professional corporation formed by Frank H. Bunker, M.D., and Benjamin Son, M.D., in July, 1973, and is established in the practice of cardiology in the Benton Harbor area. Doctors Bunker and Son are shareholders of and employed by plaintiff corporation.

In January, 1982, the parties entered a written employment agreement. The contract terms included the following stock ownership provision:

10. *Stock Ownership.* Although the Employer's activities are primarily of a personal-service nature, funds are required for equipment purchases and working capital. Accordingly, as a condition of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

continued employment, it is understood that on July 1, 1984, provided the Employee is then in the employ of the Employer, that the Employee will purchase a sufficient number of shares of the common capital stock of the Employer, such that he becomes an equal one-third (⅓rd.) shareholder. With the approval of the Employer's independent public accountant, using book value and adjusting the same to reflect the difference between book value and the fair-market value of equipment, improvements and marketable securities. To this shall be added accounts receivable to the extent not reflected in computing book value, with appropriate reductions to reflect uncollectable receivables. In paying for said shares, the Employee shall be accorded a three (3) to five (5) year payment privilege, at reasonable interest rates. At the time of said purchase the Employer's Stock Redemption Agreement currently in effect shall be amended to provide for a repurchase of said shares in the event of the Employee's death or termination of employment at a price computed in the same manner as here called for.

In July, 1982, defendant moved from Nebraska, where he had practiced cardiology for thirteen years, and began work as an employee of plaintiff. On September 23, 1983, the parties entered another employment agreement and a stock redemption agreement.

The stock redemption agreement contains the following covenant which plaintiff now seeks to enforce:

11. *Covenant Not to Compete.* In partial consideration for the redemption by the Corporation of the said shares, the Shareholder agrees that for a period of two (2) years (the same to be computed from the date of his termination of employment) that he will not engage in the practice of cardiology, either as a self-employed person, or as a partner or employee of any organization so en-

gaged in the rendering of said services within, or within a radius of thirty-five (35) miles of Benton Harbor, Michigan. This covenant shall not have application to a Shareholder, once said Shareholder has been a Shareholder in the Corporation for two (2) years or more.

On that same date, defendant purchased shares of stock in plaintiff corporation from Dr. Bunker and Dr. Son in a number equal to those shares possessed by the two doctors. The agreed acquisition cost was in the principal amount of $110,000. As a down payment, defendant paid $30,000 in cash to Dr. Bunker and Dr. Son in equal shares. To cover the remaining $80,000 balance, defendant executed promissory notes in favor of the two doctors under which each would receive the principal sum of $40,000 plus interest at ten percent per annum. This indebtedness was secured by defendant's pledge of his shares of stock.

On January 24, 1985, Dr. Bunker and Dr. Son notified defendant that his employment would be terminated effective April 30, 1985, as a result of professional differences between them. When the two doctors learned of defendant's intention to open his own cardiology practice in the Benton Harbor area, they filed this lawsuit seeking an injunction to enforce the covenant not to compete. The trial court denied plaintiff's initial motion for a temporary injunction. One month later, the trial court heard and granted defendant's motion for summary disposition from which this appeal arises.

A motion for summary disposition under MCR 2.116(C)(10) asserts that no genuine issue of material fact exists. *Linebaugh v Berdish,* 144 Mich App 750; 376 NW2d 400 (1985). The parties here agree that no dispute of material fact exists. In deciding such a motion, the trial court must con-

sider the affidavits, pleadings, depositions, admissions and other documentary evidence. MCR 2.116(C)(10) and(G)(5).

Plaintiff disagrees with the trial court's legal analysis and conclusions of law. On appeal plaintiff urges this Court to make a de novo review, because this is an action in equity. We decline to engage in a de novo review, but decide this appeal upon the law.

At common law, a covenant not to compete was enforceable if it met four standards established by *Hubbard v Miller,* 27 Mich 15, 19; 15 Am Rep 153 (1873). First, the covenant must be for an honest and just purpose. Second, it must be established for the protection of the legitimate interest of the party in whose favor it is imposed. Third, it must be reasonable as between the parties to the contract. Finally, it must not be specially injurious to the public. *Id.*

The common law rule was changed in 1905, *Buckhout v Witwer,* 157 Mich 406, 409; 122 NW 184 (1909), when the Legislature enacted MCL 445.761; MSA 28.61 which provides:

> All agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited are hereby declared to be against public policy and illegal and void.

This statutory provision was limited by the exceptions contained in MCL 445.766; MSA 28.66 which provides:

> This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the con-

tract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services.

Both statutory provisions were in effect when the parties entered the first employment contract in January, 1982, and the two agreements in September, 1983. These provisions were repealed by § 17 of the Michigan Antitrust Reform Act, 1984 PA 274, MCL 445.787; MSA 28.70(17), which took effect March 29, 1985. Section 18 of the Michigan Antitrust Reform Act contains a saving clause which provides that a statute repealed by the act shall remain in force for the purpose of instituting or sustaining any proper action for the enforcement of any liability. MCL 445.788; MSA 28.70(18). Thus, we decide this appeal in light of the law existing under these statutory provisions at the time the parties entered their written agreements.

This Court has enforced a covenant not to compete under a contract for the sale of a business which came within the terms of the statutory exception. *Roland v Kenzie,* 11 Mich App 604, 608; 162 NW2d 97 (1968). In that case, the defendant sold his optometry practice, equipment and list of patients to another optometrist, the plaintiff's associate, under an agreement containing a noncom-

petition clause. The contract provided that upon
the plaintiff's request the defendant would provide
consulting services with respect to his former pa-
tients. The plaintiff was permitted to use the
defendant's name in the practice of optometry for
three years and permitted to use the telephone
listing of the defendant. The plaintiff was further
permitted to send out announcements to the effect
that the defendant was associated with him in the
practice of optometry. The contract provided a
liquidated damages provision in the event that the
defendant breached the contract. Approximately
two years after the sale, the defendant opened
another office for the practice of optometry, and
breached the contract by contacting former pa-
tients. This Court enforced the covenant not to
compete, describing it as an appropriate provision
to limit the competitive ability of the defendant in
order to protect the good will of the professional
business transferred. *Id.,* p 608.

This Court has refused to enforce a covenant not
to compete in other cases in which a new em-
ployee joins a professional practice, subsequently
enters a partnership agreement and then leaves
the practice to establish or to join a competing
business. *Boggs v Couturier,* 115 Mich App 735;
321 NW2d 794 (1982); *Bernstein, Bernstein, Wile
& Gordon v Ross,* 22 Mich App 117; 177 NW2d 193
(1970). In *Boggs,* the defendant, a recent graduate
of veterinary school, began working for the plain-
tiff. Almost two years later, they entered into a
limited partnership agreement under which the
plaintiff was a general partner holding a seventy-
six percent interest in the business and the defen-
dant was a limited partner holding the remaining
twenty-four percent interest. The contract con-
tained a termination provision which permitted
either party to retire from the partnership upon

written notice, and further provided that the plaintiff would have the privilege to continue operations under the name of the clinic and the use of the clinic's telephone number. The contract further contained a covenant not to compete which expressly excepted the plaintiff from its provisions and permitted the plaintiff to remain in the present location of the business.

Approximately four years later, the defendant gave notice of his intent to withdraw from the limited partnership, and the parties agreed as to the amount owed the defendant as a return of his original capital investment. When the plaintiff attempted to enforce the covenant, this Court concluded that the case did not come within the statutory exception because no sale of good will occurred. The Court noted that no good will was linked to the defendant's participation in the partnership which could be transferred on dissolution, and therefore, all the good will reposed with the plaintiff who had started the business well before the defendant was employed. The Court relied upon the holding of *Bernstein, Bernstein, Wile & Gordon v Ross, supra,* because of its similar factual setting. *Boggs, supra,* pp 742-743.

In *Bernstein, Bernstein, Wile & Gordon v Ross, supra,* the defendant entered into a written partnership agreement with the plaintiff accounting firm after having worked there for approximately two years as an employee. He purchased a five percent interest, making no initial payment and arranging for his periodic payment to be made out of his share of the profits. Approximately one year later, defendant voluntarily terminated his relationship with the plaintiff and began his own practice. The plaintiff accounting firm attempted to enforce the covenant not to compete. The Court concluded that the statutory exception did not

apply, because no sale or transfer of a business, profession or good will occurred where the defendant had no singular or separate business, profession or good will to sell to the partnership.

In another line of cases, Michigan courts have refused to enforce a covenant not to compete contained in an employment contract. *E W Smith Agency, Inc v Sanger,* 350 Mich 75, 81; 85 NW2d 84 (1957); *Wedin v Atherholt,* 298 Mich 142, 145; 298 NW 483 (1941); *Mackie v State Farm Mutual Automobile Ins Co,* 13 Mich App 556; 164 NW2d 777 (1968).

Our resolution of this case requires us to determine the nature of the parties' agreement. That is, does their agreement constitute a sale of an interest in a business or profession (e.g., the practice of cardiology) with employment incident to the sale or does it constitute an employment contract with the sale of stock incident to employment. *Vogue Cleaners & Dyers, Inc v Berkowitz,* 292 Mich 575, 579-580; 291 NW 12 (1940). In our view, it is the latter. Support is found in the express terms of the January, 1982, employment contract which required defendant to purchase stock as a condition of continued employment. Additional support is found in the nature of the relationship between plaintiff and defendant, e.g., employer-employee, and the fact that the covenant not to compete applied only to defendant and not to Dr. Bunker or to Dr. Son.

Although they are not completely similar, the facts of this case are more closely analogous to the factual pattern described in *Boggs* and *Bernstein.* Although defendant was not new to the profession, he was new to the market in the Benton Harbor area. His status in relation to plaintiff corporation was that of a mere employee for approximately one year before he became a shareholder. Like

*Boggs,* the stock redemption agreement restored the status quo. Although the method of valuing defendant's shares results in a greater return to defendant than the initial purchase price, the pleadings do not allege that the increase in value is not attributable to defendant's individual contributions (e.g., development of his own clientele or good will, and the like).

Defendant claims that the covenant is unenforceable because the parties' agreement is not within one of the limited exceptions contained in MCL 445.766; MSA 28.66, and therefore is barred as against public policy. Plaintiff claims that the agreement is one for the sale of a business within the first statutory exception. Thus, plaintiff claims that the only objective of the covenant is to protect the corporation. Second, the covenant is incident to a sale of an interest in the corporation and in its good will. Finally, the transfer or sale of stock qualifies under the statutory exception regardless of whether it accompanies an involuntary termination of employment.

We agree with the trial court that the covenant did not have as its sole object the protection of plaintiff corporation. The covenant was designed to protect the corporation for a mere two years and by its terms did not apply to Dr. Bunker and Dr. Son. It is reasonable to conclude that the covenant sought to protect the corporation from competition by a newly hired employee who leaves rather than complete protection of the corporation's good will. We also reject the argument that the stock redemption constitutes a sale of an interest or a sale of good will. The stock redemption did not effect a complete transfer of the corporation's business, equipment and list of patients. Compare, *Roland v Kenzie, supra.* Further, defendant was merely reselling that which he had initially purchased from

the corporation without selling a separate business interest or good will. Compare, *Boggs v Couturier, supra.* Finally, we reject plaintiff's argument that the stock redemption constitutes a transfer or sale of stock without regard to defendant's involuntary termination. In order to accept this argument, we would have to ignore the fact that defendant's purchase and sale of the shares were exclusively tied to his employment status. We prefer to view the parties' relationship and these transactions in their entirety, and not in isolation.

We conclude that this case does not come within the statutory exceptions. Therefore, the covenant is void as against public policy and unenforceable. Having decided this case under the statutory provisions, we do not consider the enforceability of the covenant under the common law. Having determined that the covenant is void as against public policy, plaintiff's estoppel argument is without merit.

Affirmed.