**In re Robert Cecil SPRADLIN, Sr., Debtor.**

**Robert C. Spradlin, Plaintiff/Appellee,**

v.

**Lakestates Workplace Solutions Inc., et al., Defendants/Appellants.**

No. 02–CV–71237.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 3, 2002.

Andrew Zack, Munro & Zack, PLLC, Troy, MI, for Robert Spradlin.

Ronald Longhofer, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Lakestates Workplace Solutions.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I. Introduction

This is a bankruptcy appeal in an adversary proceeding with a long procedural history. The case began when the debtor, Robert C. Spradlin (Spradlin) sued defendants Lakestates Workplace Solutions, Inc, (Lakestates), Steelcase, Inc., (Steelcase), Steelcase Financial Services, Inc. (SFSI),[1] and the Holland Group, L.L.C., d/b/a Workplace Integrators' (Holland) in Oakland County Circuit Court seeking to invalidate a non-competition agreement (NCA) between Spradlin and the Steelcase Parties.

When Spradlin later filed for bankruptcy, the Steelcase Parties removed Spradlin's state court case to federal court, where it was later transferred to the bankruptcy court. The Steelcase Parties then filed a counterclaim seeking a declaration that (1) Spradlin's obligations under the NCA are not dischargeable in bankruptcy (Count I), and (2) that Spradlin unlawfully converted several items of property belonging to or serving as collateral for a debt owed to SFSI (Count II). The Steelcase Parties' counterclaim became an adversary proceeding in Spradlin's bankruptcy case.

Presently before the Court is the Steelcase Parties' appeal[2] from the bankruptcy

---

1. Lakestates, Steelcase, Inc. and SFSI will be collectively referred to as the Steelcase Parties. Holland will be referred to separately.

2. There have been several appeals from the bankruptcy court in this case. In one appeal, the Steelcase Parties appealed from the denial of a motion for a preliminary injunction to

court's March 18, 2002 Opinion Regarding Validity of Noncompetition Agreement, following cross motions for summary judgment filed by Spradlin and the Steelcase Parties. The bankruptcy court held that (1) Lakestates, Steelcase, and SFSI lack standing to seek damages based on Spradlin's breach of the NCA, (2) Holland (the only party with standing) has failed to show that it was harmed by Spradlin's admitted violations of the non-competition agreement, and (3) the NCA itself is unenforceable as a matter of law because the NCA did not expressly include the sale or transfer of goodwill.

For the reasons which follow, the decision of the bankruptcy court is AFFIRMED IN PART AND REVERSED IN PART. The procedural steps, which includes the withdrawal of the order of reference to the bankruptcy court, is the subject of a separate order.

## II. Background

The bankruptcy court's opinion of March 18, 2002 set forth the relevant facts, which the Court adopts as its own, repeated as follows:

> Robert C. Spradlin was the sole or controlling shareholder in two companies, Contract Interiors, Inc. and Contract Interiors of Ohio, Inc. [the CI companies]

> These companies operated in Michigan and Ohio as dealerships of office furniture manufactured by Steelcase, Inc.

> The dealerships defaulted on various obligations held by SFSI.

> Under the terms of the foregoing agreement, Spradlin and the [CI companies] surrendered to SFSI assets securing the unpaid obligations and SFSI accepted the collateral in satisfaction of those obligations.

> By way of separate agreement, SFSI was to convey to Lakestates the assets acquired from Spradlin and the dealerships.

> On October 28, 1996, the parties signed a "Non Competition Agreement"

> Pursuant to the NCA, Spradlin and the dealerships agreed that they would not compete, directly or indirectly, in any manner with Lakestates in any part of [Michigan or Ohio] in the office and commercial furniture businesses.

> The agreement not to compete was to run for a period of five years, commencing from the date the NCA was executed.

> The following consideration was to be paid by the Steelcase Parties in exchange for the covenants set forth in the NCA (i) $900,000 and $100,000 to the dealerships and Spradlin, respectively, upon execution of the NCA; and (ii)

enjoin Spradlin from violating the NCA. The Court affirmed the bankruptcy court. *See* Order dated January 5, 2000. The second appeal was Spradlin's appeal from the bankruptcy court's determination that Michigan law exempts only one of Spradlin's Individual Retirement Accounts, which the parties settled prior to a decision by the Court. The third appeal followed the bankruptcy court's findings and fact and conclusions of law on counts I and II of the Steelcase Parties' counter claim. As to Count I, the bankruptcy court found that the NCA was a dischargeable debt. As to Count II, the bankruptcy court

found that Spradlin unlawfully converted a 1993 Ford Dump Truck, a laptop computer, and a set of four first-row Red Wings season tickets, and therefore these debts were not dischargeable. The Bankruptcy Court also found that a 1994 Jet Ski trailer, a 1994 Chrysler Wagon, a 1995 Pontiac Bonneville, a 1994 Dodge Viper, an expensive red amber vase, and certain checks were not unlawfully converted and therefore dischargeable debts. The Court affirmed the bankruptcy court on both counts. *See* Memorandum and Order dated January 5, 2001.

$500,000 to the dealerships on October 28, 2001 [the date the NCA expired].

In June of 1997, Lakestates' interest in the NCA, along with other Lakestates assets, was purchased by [Holland]

On March 13, 1998, Spradlin filed a petition for relief under title 11 of the United States Code. The case is currently pending under chapter 7 of the Bankruptcy Code.

The Steelcase Parties and Holland (collectively, the "Creditors") filed a proof of claim based in part upon breach of the NCA. Spradlin, against whom the Creditors have a pending action seeking denial of discharge pursuant to various provision under 11 U.S.C. § 727(a), objected to allowance of the claim.... Each side has filed a motion for partial summary judgment based solely on the breach-of-contract issue....

### III. Standard of Review

■ This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158. The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Baker & Getty Financial Serv., Inc.,* 106 F.3d 1255, 1259 (6th Cir.1997); *In re Arnold,* 908 F.2d 52 (6th Cir.1990); *In re Gibson Group,* 66 F.3d 1436 (6th Cir.1995).

### IV. Analysis

#### A. Standing

■ The bankruptcy court held that only Holland has standing to enforce the NCA because Lakestates assigned its interests in the NCA to Holland and thus lacks standing. The bankruptcy court also found that SFSI and Steelcase lacked standing because even though they were parties to the SSA and paid Spradlin $100,000.00, they lacked standing because the non-competition agreement precludes competition only with Lakestates.

On appeal, the Steelcase Parties admit that "the issue of standing is largely academic because it is undisputed that [Holland] has standing to enforce the NCA." Steelcase Parties' brief on appeal at p. 36 n. 38. Spradlin argues that the bankruptcy court did not err because the plain language of the NCA states that the right to recover damages for breach of the NCA vests only with Holland.

Spradlin's argument is well-taken. Paragraph 1A of the NCA state that "the CI Parties [Spradlin and the CI companies] shall not compete, directly or indirectly, in any manner with the Company...." The Company is defined in the NCA as Lakestates, which later sold its assets to Holland. Moreover, paragraph 6, entitled "Binding Effect and Benefits" states that "This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against ... the successor and assigns of the Company [Lakestates]. Nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies under or by reason of this Agreement except as expressly stated in this Agreement." Paragraph 7, entitled "Amendments and Waivers," states "This Agreement may be amended, modified, superseded, or canceled, and any terms of this Agreement may be waived, only by a written instrument signed by the CI Parties and the Company [Lakestates] and approved by the Company's Board of Directors. The failure of the Company at any time to require performance of any provision of this Agreement shall not affect the right of the Company at a later time to enforce that or any other provision...." The bankruptcy court correctly interpreted these provisions as "indicat[ing] quite clearly that this right [to

834

recover damages should Spradlin violate the NCA] vested solely in Lakestates." bankruptcy opinion at p. 5. Because it is undisputed that Lakestates assigned all of its rights under the NCA to Holland, the bankruptcy court did not err in holding that Holland is the only party with standing to enforce the NCA.

### B. Enforceability of the NCA

#### 1. Michigan Law

As to whether the NCA is enforceable, the bankruptcy court correctly began with an examination of Michigan's Antitrust Reform Act (MARA), M.C.L. § 445.771, *et seq.* Section 445.772 states that "[a] contract ... between 2 or more person in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."[3] The bankruptcy court also correctly found that non-competition agreements, such as the NCA at issue here, are within the scope of MARA. The bankruptcy court was also correct in finding that MARA prohibits only *unreasonable* trade restraints. *See* bankruptcy opinion at p. 9.

The bankruptcy court, however, agreed with Spradlin's argument[4] that the NCA was not enforceable because goodwill was not among the assets acquired by the SSA.[5] This is where the Court's agreement with the bankruptcy court ends. The

starting point in this analysis is Michigan antitrust law[6] and non-competition agreements as viewed as an unlawful restraint on trade. An excellent overview of the subject is found in the Michigan Court of Appeals' recent decision in *Bristol Window and Door, Inc. v. Hoogenstyn,* 250 Mich. App. 478, 650 N.W.2d 670 (2002) where the court of appeals detailed the history of Michigan law in this area and concluded that the rule of law in Michigan with respect to non-competition agreements is as follows:

**Our review of the history of restraint of trade law in Michigan makes clear, the common law in Michigan contemplated the enforceability of noncompetition agreements that qualified as reasonable. *Hubbard, supra* at 19; *Cardiology Associates of Southwestern Michigan, PC v. Zencka,* 155 Mich.App. 632, 636, 400 N.W.2d 606 (1985). The Legislature's enactment of former M.C.L. § 445.761 altered the common-law rule from 1905 until 1985, when the MARA replaced it. *Cardiology Associates, supra* at 636–637, 400 N.W.2d 606. The Legislature's repeal of and decision not to reenact former M.C.L. § 445.761, which was in derogation of the common law, clearly demonstrates**

3. This section, known as section 2 of MARA was derived from section 2 of the Uniform State Antitrust Act.

4. Spradlin also argued that the NCA was not enforceable under a so-called "Negative Inference Theory," under which Spradlin argued that under MARA, all non-competition agreements other than those between an employer and an employee are invalid. The bankruptcy court rejected this argument, and Spradlin does not raise it on appeal.

5. The bankruptcy court based its determination that no good will from Spradlin and the CI companies was given as part of the transfer of assets to the Steelcase Parties on the

deposition testimony of William Geiger, who managed the CI companies for Steelcase and was a negotiator for SFSI in the SSA, and who stated that in his opinion, the Steelcase Parties did not purchase any good will as part of the SSA and NCA. Even assuming that the bankruptcy court was correct in holding that the failure to include good will dooms the NCA, this is scanty evidence. Also noteworthy is Spradlin's statement that there was no good will left in the CI companies at the time the SSA was executed because Steelcase had "looted" the CI companies.

6. The parties agree that Michigan law applies. The NCA states as much. *See* ¶ 11.

the Legislature's intent to revive the common-law rule set forth in *Hubbard, supra* at 19, that the enforceability of noncompetition agreements depends on their reasonableness. *People v. Reeves,* 448 Mich. 1, 8, 528 N.W.2d 160 (1995), superseded by statute on other grounds as recognized in *People v. Nowack,* 462 Mich. 392, 400–401, 614 N.W.2d 78 (2000) (explaining that "[t]he repeal of a statute revives the common-law rule as it was before the statute was enacted").

. . . .

*Bristol,* 250 Mich.App. at 494–95, 650 N.W.2d 670 (emphasis added). The Court accepts the Michigan Court of Appeals' decision as the controlling rule of law in Michigan in the absence of any Michigan Supreme Court decision to the contrary.

■■■ Thus, the test for whether or not a non-competition agreement is enforceable is reasonableness. *Hubbard v. Miller,* 27 Mich.App. 15, 1873 WL 5848 (1873), a case cited by the bankruptcy court, set forth this very rule, as noted by the Michigan Court of Appeals in *Bristol.* A fair reading of *Hubbard,* however, does not support the bankruptcy court's view that a non-competition agreement made in connection with a sale or transfer of a business must also include the sale or transfer of goodwill in order to meet a threshold standard of reasonableness. *Hubbard* does not mention good will specifically as a requirement for enforceability of a non-competition agreement. In fact, *Hubbard* frames the test for reasonableness as follows:

But if, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specifically injurious to the public, the restraint will be held valid.

*Hubbard,* 27 Mich. at 19, 1873 WL 5848. The bankruptcy court did not apply this test in determining whether the NCA is enforceable.

■■■ To be sure good will may be an important component of a transfer or sale of a business and is, as the bankruptcy court noted, "relevant to the issue of reasonableness." The Steelcase Parties do not dispute this. However, the bankruptcy court went too far in holding that it is an absolute prerequisite to enforcement of a non-competition agreement. The bankruptcy court apparently became so caught up with the presence of good will that it failed to apply "the rule of reason" to test the enforceability of the NCA.

The bankruptcy court's discussion of good will really relates more to the issue of whether there was adequate consideration given for the NCA, which could be a factor in determining whether the NCA itself is reasonable. Indeed, that it was the bankruptcy court appears to be saying at pages 20–22 of its opinion.

Overall, the Court finds the bankruptcy court erred in its decision regarding of the enforceability of the NCA by not applying the common law rule of reasonableness as set forth in *Hubbard.* Having made this determination, the Court will then address whether the NCA is enforceable under Michigan law,[7] *i.e.* whether the NCA is reasonable.

7. The Court's decision to analyze whether the NCA is reasonable under Michigan law logically follows from the contemporaneous order withdrawing the order of reference to the bankruptcy court. As indicated at the hearing on August 28, 2002, the Court desires to

## 2. Application

■ Applying the rule of reasonableness, the Court finds the NCA is enforceable as a matter of law despite Spradlin's arguments to the contrary. First, it is limited in geographic scope, namely to Michigan and Ohio. It is reasonable as to subject matter—it only limits Spradlin from engaging in the office furniture business; it does not deny him the ability to engage in other businesses. It is reasonable as to duration-five years. It is also reasonable given the circumstances of the parties relationship—it was executed in connection with the transfer of Spradlin's businesses, the CI companies, to the Steelcase Parties and as such was entered into to protect the assets that the Steelcase Parties acquired from Spradlin by prohibiting him from competing with them.

## 3. Good Will

Although the bankruptcy court found that no good will was transferred relying on the testimony of Geiger, the Court is hard-pressed to conclude that good will was at least implicit in the transfer. Good will has been defined as "[t]he privilege, granted by the seller of a business to the purchaser, of trading as his recognized successor; the possession of a ready-formed 'connexion' of customers, considered as an element in the saleable value of a business, additional to the value of the plant, stock-in-trade, book-debts, etc." Oxford English Dictionary, on-line edition, available at www.oed.com. Here, Spradlin transferred the assets of the CI companies to the Steelcase Parties under the Surrender and Settlement Agreement, and although the parties did not explicitly state that the good will of the CI companies was also being transferred, it is difficult to see how good will was also not transferred. The Steelcase Parties essentially obtaining Spradlin's office furniture business and then, through Holland, began to engage in the office furniture business with those same assets. Although Spradlin says that his businesses were no longer operating at the time of the Surrender and Settlement Agreement, that does not mean that there was no good will to give. Even if no longer operating, the CI companies still retained the intangible elements of good will such as its network of customers. Good will had to have been part of the transfer because otherwise, as noted at the hearing, the $100,000 given to Spradlin personally for his promise not to compete in the office furniture business would have been a mere gratuity.

## C. Damages

The bankruptcy court also held that the Steelcase Parties were not entitled to the return of the $100,000.00 paid to Spradlin upon execution of the NCA because Holland did not offer any evidence of its damages. The issues of what damages Holland incurred as a result of Spradlin's alleged breach and whether Spradlin must return only the $100,000.00 are premature.

SO ORDERED.

proceed expediently with this case. Moreover, the parties' papers addressed the issue of whether the NCA is reasonable and the Court is satisfied with the parties' presentation of the issue.