715 N.W.2d 914 (2006)
270 Mich. App. 506
ST. CLAIR MEDICAL, P.C., Plaintiff/Counter-Defendant-Appellee,
v.
Christopher BORGIEL, Defendant/Counter-Plaintiff-Appellant.
Docket No. 256217.
Court of Appeals of Michigan.
Submitted January 11, 2006, at Detroit.
Decided January 19, 2006.
Approved for Publication March 14, 2006, at 9:10 a.m.
Released for Publication May 24, 2006.
*916 Fletcher Clark Tomlinson Fealko & Monaghan, P.C. (by John D. Tomlinson), Port Huron, for the plaintiff.
*917 Williams Acosta, P.L.L.C. (by Victor J. Torres), Detroit, for the defendant.
Before: MARK J. CAVANAGH, P.J., and HOEKSTRA and MARKEY, JJ.
PER CURIAM.
Defendant appeals by right the trial court's order granting summary disposition in favor of plaintiff in this contract action involving a covenant not to compete. We affirm.
Defendant Christopher Borgiel, M.D., began working for plaintiff on October 15, 2001, and signed an employment contract that provided in relevant part:
1. Employment for professional services. The Employer hereby employs the Employee and the employee accepts such employment as a physician to perform services at Greater Yale Medical Clinic and Mitchell Medical Center.
* * *
7. Restricted Covenant. The employee shall agree not to embark on medical practice within 7 (seven) miles of either office for at least one (1) year after this Employer-Employee relationship has ended. The employee shall reimburse the corporation $40,000.00 if these terms are breached.
From October 2001 through July 2003, defendant worked almost exclusively at the Greater Yale Medical Clinic in Yale, Michigan; he also worked approximately six hours during the 20-month employment period at the Mitchell Medical Center in Port Huron, Michigan. On June 18, 2003, defendant submitted a letter of resignation advising plaintiff that he was terminating his employment on July 2, 2003. Further, he stated his intent to work for Physician's Health Care Network in Fort Gratiot, which is located within seven miles of the Mitchell Medical Center.
Plaintiff filed a complaint alleging that defendant was in violation of the restrictive covenant and requested that defendant pay liquidated damages in the amount of $40,000 for breach of contract. Defendant filed a counterclaim for a declaratory judgment that the restrictive covenant and liquidated damages clause were void and unenforceable. Plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10) on its claim for breach of contract and defendant's complaint for declaratory judgment. Defendant filed a cross-motion for summary disposition pursuant to MCR 2.116(I)(2). The circuit court granted plaintiff's motion, finding that the restrictive covenant was enforceable, that defendant violated the covenant by working within seven miles of plaintiff's Port Huron office, and that the liquidated damages clause was enforceable. The court subsequently issued an order awarding plaintiff $40,000, plus interest, offset by $3,300 that plaintiff still owed defendant. The court granted defendant's motion to stay enforcement of the judgment pending appeal.
Defendant argues on appeal that the covenant did not restrict him from practicing medicine within seven miles of the Mitchell Medical Center, so he did not violate it. We disagree.
A trial court's decision on a motion for summary disposition is reviewed de novo. Maiden v. Rozwood, 461 Mich. 109, 118, 597 N.W.2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. Maiden, supra at 120, 597 N.W.2d 817. The moving party must specifically identify the matters that it believes have no disputed factual issues. Id.; MCR 2.116(G)(4). The moving party must support its position with affidavits, depositions, admissions, or other documentary evidence. Quinto v. Cross & Peters Co., 451 Mich. 358, 362, 547 N.W.2d 314 (1996); MCR 2.116(G)(5). Once the moving party *918 has met this burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. Quinto, supra at 362, 547 N.W.2d 314. When the burden of proof at trial falls on the party opposing the motion, that party may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts to show that there is a genuine issue for trial. Id.; Maiden, supra at 121, 597 N.W.2d 817.
The construction and interpretation of a contract present questions of law that we review de novo. Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 353, 596 N.W.2d 190 (1999). The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. Old Kent Bank v. Sobczak, 243 Mich.App. 57, 63, 620 N.W.2d 663 (2000). "It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10)." Henderson, supra at 353, 596 N.W.2d 190. "Conversely, if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." Id.
Here, the contract unambiguously prohibited defendant from engaging in medical practice within seven miles of either the Yale Medical Clinic or the Mitchell Medical Center. Defendant's effort to read the covenant to prohibit the practice of medicine within seven miles of a clinic where he actually provided the majority of his services is unconvincing. The clause clearly prohibits practice within seven miles of either clinic, without regard to where the services were performed. Moreover, defendant readily admits that he provided limited services at the Mitchell Medical Center, and defendant does not dispute that his new position is within seven miles of the Mitchell Medical Center. Thus, the trial court did not err when it concluded that the contract was unambiguous and defendant had breached it.
Next, defendant argues that the covenant not to compete is unreasonable and violates the Michigan Antitrust Reform Act (MARA), MCL 445.771 et seq. We disagree.
"A contract . . . between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." MCL 445.772. But, agreements not to compete are authorized by § 4a(1) of the MARA, MCL 445.774a(1), which provides:
An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement in order to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.
This Court recently concluded that § 4a(1) represents a codification of the commonlaw rule "that the enforceability of noncompetition agreements depends on their reasonableness." Bristol Window and Door, Inc. v. Hoogenstyn, 250 Mich.App. 478, 495, 650 N.W.2d 670 (2002).
At common law, a covenant not to compete was enforceable if it met four standards established by Hubbard v. Miller, 27 Mich. 15, 19, 15 Am Rep 153 (1873). First, the covenant must be for *919 an honest and just purpose. Second, it must be established for the protection of the legitimate interest of the party in whose favor it is imposed. Third, it must be reasonable as between the parties to the contract. Finally, it must not be specially injurious to the public. Id. [Cardiology Assoc. of Southwestern Michigan, PC v. Zencka, 155 Mich.App. 632, 636, 400 N.W.2d 606 (1985).]
Thus, a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.
Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. United Rentals (North America), Inc. v. Keizer, 202 F Supp 2d 727, 740 (W.D.Mich., 2002). To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill. Id.; Follmer, Rudzewicz & Co., PC v. Kosco, 420 Mich. 394, 402-404, 362 N.W.2d 676 (1984). In a medical setting, a restrictive covenant can protect against unfair competition by preventing the loss of patients to departing physicians, protecting an employer's investment in specialized training of a physician, or protecting an employer's confidential business information or patient lists. Community Hosp. Group, Inc. v. More, 183 N.J. 36, 58, 869 A.2d 884 (2005); Berg, Judicial enforcement of covenants not to compete between physicians: Protecting doctors' interests at patients' expense, 45 Rutgers L. R. 1, 17-18 (1992).
We agree with defendant that material issues of fact remain regarding whether the covenant was protecting plaintiff's confidential patient lists and business information or plaintiff's investment in defendant's training. The lower court record is contradictory regarding whether defendant had access to confidential business information or patient lists. Plaintiff suggested that defendant had access to confidential information; however, defendant averred that during the course of his employment he was "unaware of potentially confidential information concerning operation of St. Clair Medical as a business such as patient lists, price lists, or the existence or content of any other possibly confidential business information." Accordingly, there are issues of disputed fact regarding whether plaintiff was protecting itself from defendant's use of confidential information or patient lists. Plaintiff also asserted that it "expended substantial resources in training [defendant] to be a successful practitioner, including providing casual advice from other more experienced physicians, access to professional training and seminars, and working knowledge of how a successful practice is run on a day-to-day basis." In Follmer, our Supreme Court concluded that "`general knowledge, skill, or facility acquired through training or experience . . . acquired or developed during the employment does not, by itself, give the employer a sufficient interest to support a restraining covenant ....'" Follmer, supra at 402 n. 4, 362 N.W.2d 676, quoting Blake, Employment agreements not to compete, 73 Harv L. R. 625, 652 (1960). Here, plaintiff has failed to offer any evidence indicating that defendant benefited from specialized training that he could then use to unfairly compete with plaintiff. Accordingly, we also conclude that there are disputed issues of fact regarding whether plaintiff provided defendant *920 anything other than general training and experience.
We conclude, nevertheless, that the restrictive covenant was protecting plaintiff's competitive business interest in retaining patients, that it provided plaintiff with time to regain goodwill with its patients, and that it prevented defendant from using patient contacts gained during the course of his employment to unfair advantage in competition with plaintiff. A physician who establishes patient contacts and relationships as the result of the goodwill of his employer's medical practice is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure. See Weber v. Tillman, 259 Kan. 457, 467-469, 913 P.2d 84 (1996); Berg, supra at 17-18. This risk of unfair competition in this context does not result from access to patient lists, but from the risk that patients will seek to follow a departing physician. Where the physician-patient relationship was facilitated by a physician's association with his employer or resulted from advertising dollars expended by that employer, a physician can unfairly take advantage of the employer's investments in advertising and goodwill when competing with the former employer to retain patients. Here, plaintiff operated clinics located in the cities of Yale, St. Clair, and Port Huron, which drew patients residing throughout St. Clair County. Plaintiff expended funds to advertise its services in these cities. Defendant practiced medicine for plaintiff for approximately 20 months and took advantage of plaintiff's goodwill in the community and advertising expenditures to attract patients. We conclude that the covenant protected plaintiff from unfair competition by defendant and therefore protected a reasonable competitive business interest as required by MCL 445.774a(1).
Defendant next argues that the restrictive covenant is unenforceable because the geographic restriction is unreasonable in relation to plaintiff's competitive interest, i.e., defendant provided the overwhelming majority of his services at the Clinic that was more than twenty miles from the location of his new employment. We conclude that the restrictive covenant is modest in geographical scope and is not unreasonable in relation to plaintiff's competitive business interests. The principal shareholder and president of plaintiff corporation stated, "When [defendant] was hired by St. Clair Medical, it was anticipated that he would see patients at both the Greater Yale Medical Clinic and the Mitchell Medical Center." Although defendant worked primarily at one location, there is no evidence that his patients were only drawn from within seven miles of that location. Plaintiff's clinics drew patients residing throughout St. Clair County. Indeed, since defendant's departure, some patients previously scheduled for plaintiff's Yale office have visited plaintiff's Port Huron office. We conclude that a prohibition on practice extending for seven miles around two of plaintiff's offices where it was anticipated that defendant would work is not unreasonable and protects plaintiff's interest in retaining patient goodwill.
Defendant also argues that the covenant is unreasonable in light of the Principles of Medical Ethics issued by the American Medical Association, which provide:
Covenants-not-to-compete restrict competition, disrupt continuity of care, and potentially deprive the public of medical services. The Council on Ethical and Judicial Affairs discourages any agreement which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of an employment, *921 partnership, or corporate agreement. Restrictive covenants are unethical if they are excessive in geographic scope or duration in the circumstances presented, or if they fail to make reasonable accommodation of patients' choice of physician. [AMA, E-9.02: Restrictive Covenants and the Practice of Medicine.]
We conclude that this standard merely reflects the common-law rule of reasonableness and states that restrictive covenants are unethical only if they are excessive in geographical scope or duration. As previously concluded, this restrictive covenant is not excessive in geographical scope. Defendant does not challenge its duration. Moreover, patients' choice of physician is protected by the modest geographical scope of the covenant and the liquidated damages clause. Finally, this modest geographical restriction is not specially injurious to the public. Cf. Community Hosp, supra at 61-62, 869 A.2d 884 (concluding that a restrictive covenant covering a 30-mile radius is injurious to the public where it would prohibit a neurosurgeon from practicing in an area were there was a shortage of neurosurgeons). Here, defendant can continue patient relationships by merely practicing outside a modest geographic restriction or by practicing within the restricted area and simply paying the liquidated damages provided for in the contract.
Next, defendant argues that the liquidated damages clause bears no reasonable relationship to the actual damages plaintiff suffered and is an unconscionable windfall. We disagree. The issue whether a liquidated damages provision is valid and enforceable is a matter of law that this Court reviews de novo. UAW-GM Human Resource Ctr. v. KSL Recreation Corp., 228 Mich.App. 486, 508, 579 N.W.2d 411 (1998). A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in the event of a breach and is enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive. Id. Such a provision is particularly appropriate "where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature. . . ." Papo v. Aglo Restaurants of San Jose, Inc., 149 Mich.App. 285, 294, 386 N.W.2d 177 (1986). Here, we conclude that the amount of damages is reasonable in relation to the possible injury suffered. Plaintiff stated that the clause was included in the contract because damages associated with a physician's departure are difficult to calculate. Accordingly, a liquidated damages provision is particularly appropriate. The $40,000 in liquidated damages does not strike this Court as unconscionable or excessive in relation to potential patient loss; consequently, the trial court did not err in enforcing the parties' agreement.
Next, defendant argues that summary disposition was prematurely granted. We disagree. A motion for summary disposition under MCR 2.116(C)(10) is premature if discovery has not closed, unless there is no fair likelihood that further discovery would yield support for the nonmoving party's position. Ensink v. Mecosta Co. Gen. Hosp., 262 Mich.App. 518, 540, 687 N.W.2d 143 (2004). A party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. Hyde v. Univ. of Michigan Bd. of Regents, 226 Mich.App. 511, 519, 575 N.W.2d 36 (1997). Here, defendant did no more than state the position that discovery should be extended if the trial court disagreed with him, but failed to identify any specific facts or independent evidence that he anticipated discovering to support his position. Accordingly, *922 we conclude that summary disposition was not prematurely granted.
Finally, defendant argues that the trial court inappropriately premised its conclusion on this issue on erroneous findings of fact. Defendant's arguments in this regard merely challenge conclusions of law already addressed by this Court and, thus, have no merit.
We affirm.